[No. 33867-6-I.   Division One.   April 29, 1996.]

THE STATE OF WASHINGTON, *Respondent*, v. NICHOLAS LOUIS DIEMEL, *Appellant*.

*Kevin R. Cole* of Washington Appellate Defender Association; and *Eric Broman* and *Nielsen & Acosta*, for appellant.

*Norm Maleng, Prosecuting Attorney*, and *Robin Fox, Deputy*, for respondent.

GROSSE, J. — Nicholas Louis Diemel, convicted of third degree rape, contends the trial court erred in denying his motion for an in camera review and inspection of the complainant's counseling records. The trial court's determination that Diemel did not make the requisite particularized showing that the counseling records were likely to contain material relevant to the defense was a proper exercise of discretion. This threshold showing required by the trial court is entirely consistent with state and federal law, and we affirm.

The victim (hereinafter referred to as K) agreed to accompany Diemel on his sailboat. They originally met at a restaurant where K worked, and Diemel was an occasional customer. K also worked in a beauty salon on Lake Washington in Kirkland, so Diemel picked her up at a public dock near the salon about 4:30 one afternoon. They sailed from Kirkland to a restaurant on Lake Union in Seattle, had dinner, sailed after dinner, and ended their trip about 5:30 the next morning.

K alleges Diemel raped her, forcing her to have sex in the boat before it docked. She specifically denied the intercourse was consensual. She denies ever being intoxicated or having had enough alcohol to become intoxicated.

Diemel's version is significantly different. He claims K was a willing participant in all of their activities during the 13 or so hours they were together. He asserts K drank several bottles of wine and/or champagne and became intoxicated. Although he recognizes the intoxication may have impaired her judgment to a degree, Diemel claims the sex was with her consent.

After Diemel's boat docked, K left and called 911 from a

nearby phone booth. When police officers found her in the phone booth, K was quite upset and huddled in a corner. One officer testified he had a difficult time convincing her to leave the phone booth so the police could take her to the hospital. Another officer testified she indicated she had only one drink on the boat. The officer smelled a slight odor of alcohol on her breath, but did not believe she was intoxicated. At the hospital, a registered nurse obtained a blood sample from K. The sample tested at .08 some six to seven hours after K said she had her last drink.

Approximately two to three weeks after the incident, K was referred to a therapist who counseled her for seven months. Prior to trial, Diemel filed a written motion, affidavit, and brief requesting that the court conduct an in camera review of the records pertaining to this counseling, and order disclosure of any of the records relevant and helpful to the defense. In the affidavit he made three arguments in support of the motion.

First, because K maintained she was never intoxicated throughout the evening yet had a .08 blood alcohol level several hours after the alleged rape, she may have told her therapist something different about her drinking and intoxication than she admitted before. This information was to be used to impeach K's credibility. Second, defense counsel argued that K had confided to others that she was once in an abusive relationship and thus there might be a reason other than a sexual assault to explain the way she acted in the telephone booth. In support of this argument defense counsel stated he contacted a therapist who said that post-traumatic stress disorder resulting from some types of physical abuse, in conjunction with alcohol abuse, could have been the reason K cowered in the phone booth. Nonetheless, there was no affidavit from the unnamed expert. Third, defense counsel argued that K might have told her therapist about consenting to the sexual intercourse or foreplay with Diemel.

The trial court heard argument, reviewed the briefing of the parties, and denied Diemel's motion. The trial court

characterized the request for the records by the defense as "entirely speculative." The trial court also stated that the request regarding the victim's blood alcohol content was more closely directed at alcohol consumption than finding K's statements to her therapist useful.

■ The general rule with regard to whether or not a trial court will hold an in camera hearing to determine the scope of discovery of privileged records is that the decision is within the discretion of the trial court.[1]

Two cases are critical to resolution of the issue: *Ritchie v. Pennsylvania*[2] and *State v. Kalakosky*.[3] At the trial court hearing, Diemel cited to the *Kalakosky* case as the standard, and argued that his motion and affidavit met the burden therein set forth for granting an in camera inspection. On appeal, Diemel now claims *Kalakosky* is distinguishable and does not apply because it interprets the rape crisis center statute, RCW 70.125.065, and records therefrom, whereas his request was for counseling records protected under a different statute[4] and discoverable under a court rule.[5]

Diemel claims a heightened federal due process right to the in camera inspection under *Pennsylvania v. Ritchie*.[6] Citing a footnote, he claims *Ritchie* requires only a "plausible showing" of how the confidential information would be material and favorable to the defense. However, the Court also said in the same footnote that a defendant may not require a court to inspect a confidential file

---

[1]*State v. Espinosa*, 47 Wn. App. 85, 88, 733 P.2d 1010 (1987); ·see also, *State v. Kalakosky*, 121 Wn.2d 525, 550, 852 P.2d 1064 (1993); *State v. Ahlfinger*, 50 Wn. App. 466, 473, 749 P.2d 190, *review denied*, 110 Wn.2d 1035 (1988).

[2]*Pennsylvania v. Ritchie*, 480 U.S. 39, 107 S. Ct. 989, 94 L. Ed. 2d 40 (1987).

[3]*Kalakosky*, 121 Wn.2d 525.

[4]*See* RCW 18.19.180(5).

[5]CrR 4.7(d).

[6]*Ritchie*, 480 U.S. 54.

without first establishing a basis for the claim that it contains material evidence.[7]

Diemel seems to be arguing that *Ritchie* and *Kalakosky* are on a collision course. Diemel claims due process under *Ritchie* entitles a defendant to a review of privileged documents if the affidavit makes "some plausible showing" that privileged information contains material evidence. Diemel asserts the burden under *Kalakosky*, that the affidavit must prove the requested records "likely" contain the information sought, is a higher burden than that set forth in *Ritchie*, and impermissibly limits his due process right to an in camera review.

Except in a footnote, *Ritchie* does not address the threshold showing required to obtain in camera review of privileged records. Further, that same footnote acknowledges review is not constitutionally required if a defendant's request is general and not supported by specific fact-based allegations that the privileged records contain information useful to the defendant in his case.[8]

We cannot accept Diemel's collision theory. Under either *Ritchie* or *Kalakosky*, to obtain in camera review of privileged records a defendant must establish that the records are at least material.[9] In *Kalakosky*, the defendant sought review of a rape crisis counselor's records. The affidavit in support of the motion asserted that since the complainant spoke to a counselor the defense attorney believed that the notes might contain details exculpating the defendant, or at least that would be helpful to him. The court found this to be insufficient to require an in camera review. As stated in *Kalakosky*:

In order to make an adequate threshold showing to justify an in camera inspection, a defendant must make a particular-

---

[7]*Ritchie*, 480 U.S. at 58 n.15.

[8]*See Kalakosky*, 121 Wn.2d at 549 (no constitutional impediment to requirement of showing of need before privileged records are inspected).

[9]*State v. Knutson*, 121 Wn.2d 766, 772-73, 854 P.2d 617 (1993).

ized factual showing that information useful to the defense is likely to be found in the records.[10]

In our view, this standard is not inconsistent with *Ritchie*. Moreover, we do not believe Diemel has made the requisite showing under either theory.

Although the affidavit presented here is "better" than the *Kalakosky* affidavit, the trial court did not abuse its discretion when it determined that Diemel failed to make the requisite showing that the records of K's therapist would contain information useful to the defense under either a "plausible showing" or a "likely" standard. A review of the affidavit reveals considerable speculation and little factual basis or foundation. Further, the evidence of alcohol consumption was otherwise available. The only evidence to support the post-traumatic stress theory of K's overreaction was a statement by her to Diemel that she once had been involved in an abusive relationship. The fact that she might have discussed the circumstance of her "consent" with the therapist is not sufficient in and of itself to justify the intrusion of inspection. Otherwise, any time consent is at issue, post-event counseling records would be open to inspection. A claim that privileged files might lead to other evidence or may contain information critical to the defense is not sufficient to compel a court to make an in camera inspection.

The decision of the trial court is affirmed.

BECKER and ELLINGTON, JJ., concur.

Review denied at 130 Wn.2d 1008 (1996).

---

[10]*Kalakosky*, 121 Wn.2d at 550.