# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 72812-1-I |
| Respondent, | ) ) | |
| | ) | DIVISION ONE |
| v. | ) ) | |
| FREDERICK J. WILLIAMS, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: June 13, 2016 |
| | ) | |

APPELWICK, J. — A jury found Williams guilty of multiple counts of rape of a child and child molestation, committed against his two nieces. He contends that the trial court erred in granting his request to represent himself for a brief period at the beginning of trial. He also argues that the trial court erred in refusing to sever the charges against each niece for trial, in denying his request to participate in an in camera review of school records, and in sentencing him as a persistent offender. We affirm.

## FACTS

In 2009, the State charged Frederick Williams, a registered sex offender, with committing multiple counts of rape of a child and child molestation against his nieces M.W. and E.W. The charging period for the counts involving E.W. was 1999 to 2003;

the charging period for the counts involving M.W. was 2006 to 2008. The charges arose after M.W. disclosed the abuse to a friend.

The State's evidence established that Williams began abusing E.W. when she was eight or nine years old. Most of the abuse occurred in Williams's trailer, which was located near the girls' home. When E.W. wanted money or some other favor, Williams required her to "earn" it, sometimes by "flashing," i.e., lifting her shirt and exposing her breasts.

Williams used a Polaroid camera to take photographs of E.W. On one occasion, he removed E.W.'s clothes from below her waist, had her lie down and open her legs, and then photographed between her legs. During the photo session, Williams "cup[ped]" his hand around E.W.'s vagina and touched her breasts. Williams told E.W. that he was an artist and wanted to draw her vagina.

Williams touched and sucked on E.W.'s breasts on multiple occasions. He also repeatedly cupped his hand around her vagina while inserting his finger into her vagina.

Williams began abusing M.W., E.W.'s younger sister, while M.W. was in middle school. When M.W. was 11 or 12, Williams offered to obtain a movie for her from Netflix, but required her to go to his trailer. At the trailer, Williams began kissing M.W. He then removed her shirt and bra and started kissing her breasts. Williams eventually removed all of M.W.'s clothing, put his finger into her vagina, and "moved it around." Williams then unsuccessfully attempted to insert his penis into M.W.'s vagina. After putting on his pants, Williams licked M.W.'s vagina. At some point,

Williams used a surveillance camera connected to his computer to show M.W. what her vagina looked like. Williams told M.W. that the camera was not recording.

On another occasion, Williams went into the bathroom at M.W.'s house to help her give the dog a bath. Williams closed the door, removed M.W.'s top, and started touching her breasts. Williams gave M.W. $5 for washing the dog. Williams removed M.W.'s top and touched her breasts on several other occasions.

Williams told both girls not to tell anyone about the abuse.

Following a trial in 2011, the jury found Williams guilty of 10 counts of rape of a child and child molestation. The court found that Williams was a persistent offender under the Persistent Offender Accountability Act (POAA), chapter 9.94A RCW, and imposed a sentence of life without parole. On appeal, this court reversed, concluding that the trial court erred in admitting Williams's 1991 child rape conviction under RCW 10.58.090. State v. Williams, noted at 172 Wn. App. 1027, 2012 WL 6554786, at *1; see also State v. Gresham, 173 Wn.2d 405, 413-14, 269 P.3d 207 (2012).

The State retried Williams in October 2014. Prior to trial, Williams expressed dissatisfaction with his appointed attorney, who had represented him in the first trial, and asked to represent himself. Following an extensive colloquy, the trial court granted Williams's request and appointed Williams's current attorney to serve as standby counsel.

Shortly after trial began, Williams informed the trial court that he had a severe headache and a neck injury and asked for a continuance. On the following day, Williams agreed that standby counsel should resume full representation. At trial, the

defense called a forensic psychologist, who testified that the law enforcement interviews of E.W. and M.W. were improperly suggestive and could have "potentially contaminated" the girls' memories.

The jury found Williams guilty as charged. The trial court again found that he was a persistent offender and sentenced him to a term of life without the possibility of parole.

## DISCUSSION

### I. Self-Representation

Williams contends that his request to represent himself was merely an attempt to obtain the appointment of new counsel and was therefore not unequivocal. He also maintains that the trial court's willingness to provide standby counsel precluded a knowing, intelligent, and voluntary waiver of his right to counsel. Viewed in context, the record fails to support these contentions.

The State and federal constitutions guarantee a criminal defendant both a right to counsel and the right to self-representation. State v. Madsen, 168 Wn.2d 496, 503, 229 P.3d 714 (2010). But, the right to self-representation is not self-executing. State v. Modica, 136 Wn. App. 434, 441, 149 P.3d 446 (2006), aff'd by, 164 Wn.2d 83, 186 P.3d 1062 (2008). "A criminal defendant who desires to waive the right to counsel and proceed pro se must make an affirmative demand, and the demand must be unequivocal in the context of the record as a whole." Id. A court must indulge in " 'every reasonable presumption' " against a defendant's waiver of the right to counsel. In re Det. of Turay, 139 Wn.2d 379, 396, 986 P.2d 790 (1999)

-4-

(quoting Brewer v. Williams, 430 U.S. 387, 404, 97 S. Ct. 1232, 51 L. Ed.2d 424 (1977)). We review the trial court's decision to grant the defendant's motion to proceed pro se for an abuse of discretion. Modica, 136 Wn. App. at 442.

The record establishes that Williams's decision to represent himself was not undertaken hastily. Williams first raised the issue of representing himself during pretrial motions on January 23, 2014. He informed the court that he was not satisfied with Thomas Fryer, his current attorney and the attorney who represented him during the first trial. Williams explained that "the whole idea of doing this is to try to mostly get counsel other than Fryer" and that he really wanted a specific private attorney, Andrew Subin, to substitute for Fryer. Williams assumed that the court could simply replace Fryer with Subin.

At a hearing on January 27, Williams suggested that because he had filed a complaint about Fryer with the Washington State Bar Association, Fryer had a "conflict of interest" and needed to be replaced, preferably with Subin. The trial court informed Williams that he could not create a conflict of interest merely by filing a complaint. The court also explained that if Fryer were to withdraw, the public defender's office, not the court, would choose new counsel. When the court asked if he wanted to represent himself, Williams replied:

> Partly and partly not. To be honest, to be completely honest, Your Honor, I was hoping that, um, if, you know, you get Subin in in some way, the same way that I got Mr. Fryer, I didn't realize that the court can't do that but I mean. I know my case, but I am not --

The court concluded that Williams had not identified any basis for appointing new counsel and that his request to represent himself was not unequivocal, a decision that Williams does not challenge on appeal.

On October 9, 2014, shortly before the second trial began, Williams informed the trial court that "I would like to go pro se with standby counsel." The court immediately told Williams that in Washington, "there is no right to standby counsel." Noting that the appointment of standby counsel is encouraged, however, the court ascertained that Fryer was willing to act as standby counsel. The court then explained that the role of standby counsel was limited to providing assistance, but that standby counsel could, under certain circumstances, "take over full representation" at the defendant's request.

During a detailed colloquy with Williams about the requirements for proceeding pro se, the court repeatedly advised Williams, who was facing a persistent offender sentence, that self-representation was a bad idea and that Fryer was an experienced and skilled attorney. When asked why he wanted to represent himself, Williams explained:

> Because I know my case, . . . I don't feel that Tom was representing me in the way that is beneficiary [sic] to me. I . . . feel that I can especially, with the dynamics of my case, defend myself properly.

After acknowledging that no one had threatened him or promised anything to persuade him to represent himself, Williams again stressed his dissatisfaction with Fryer:

> If you deny me pro se, I want another lawyer. I do not want Tom as my lawyer.

The court then summarized:

> THE COURT: In light of the penalty that you might suffer if you were found guilty, and, you know, the State has to prove you guilty beyond a reasonable doubt, there is no question about that, but in light of the penalty you might suffer if you are found guilty and in light of all of the difficulties you will be facing representing yourself, is it still your desire to represent yourself and give up your right to be fully represented by Mr. Fryer?
>
> THE DEFENDANT: If I have standby counsel, I think I can do it, Your Honor.
>
> THE COURT: Is this decision you made entirely voluntarily?
>
> THE DEFENDANT: Yes, sir.

The court interrupted the colloquy to address several scheduling issues, including a delay in the beginning of Williams's self-representation, to permit Fryer to argue certain motions. The court then found that Williams had knowingly, intelligently, and voluntarily waived his right to counsel and permitted him to represent himself with Fryer as standby counsel.

Williams contends that his request to represent himself was not unequivocal because he was merely seeking the appointment of another attorney. The record shows, however, that by the end of the January 2014 pretrial hearings, Williams understood the trial court could not simply replace Fryer with his preferred private attorney. Williams also expressed a reluctance to use the random procedure for the appointment of a new attorney.

During the October 9 hearing, in the face of the trial court's extensive efforts to dissuade him, Williams repeatedly and affirmatively expressed his desire to represent himself. Although Williams requested the appointment of standby counsel, the trial court immediately informed him that he had no right to standby counsel. Williams never demanded or insisted that the trial court appoint standby counsel. See State v. Mehrabian, 175 Wn. App. 678, 691-92, 308 P.3d 660 (2013) (defendant's request to proceed pro se with standby counsel was not equivocal where trial court informed defendant he had no right to standby counsel and defendant did not demand or insist on the appointment of standby counsel). Nor did Williams's repeatedly expressed dissatisfaction with Fryer render his request equivocal:

> [W]hen a defendant makes a clear and knowing request to proceed pro se, such a request is not rendered equivocal by the fact that the defendant is motivated by something other than a singular desire to conduct his or her own defense.

Modica, 136 Wn. App. at 442; see also State v. DeWeese, 117 Wn.2d 369, 376, 816 P.2d 1 (1991) (when indigent defendant fails to provide court with legitimate reasons for substitute counsel, court may require defendant to either continue with current counsel or proceed pro se).

When viewed in the context of the entire record, Williams's request to represent himself was unequivocal.

Williams's contention that the trial court's immediate willingness to appoint standby counsel rendered his waiver involuntary is also unpersuasive. After informing Williams that he had no right to standby counsel, the trial court explained that standby counsel was "not a glorified messenger" and "not [there] simply to do

-8-

everything that you want." During the following colloquy, Williams acknowledged that he had never studied law, that he had never represented himself before, that he was charged with multiple counts of child rape and child molestation, and that he was facing a two-strike persistent offender sentence. Williams also conceded that he was not familiar with the rules of evidence or criminal procedure or the procedure for jury selection. The court informed Williams that these rules would govern the trial and that even though he might have standby counsel:

> [Y]ou are on your own and the court will not tell you how to try your case or advise you how to proceed, you are held to the same standards as a practicing licensed attorney.

Throughout the colloquy, the trial court repeatedly advised Williams of the disadvantages of proceeding pro se, even with standby counsel, and urged him not to represent himself.

In order to demonstrate a valid waiver of the right to counsel, the record must show the defendant understood "the dangers and disadvantages of self-representation" and establish "his choice is made with eyes open." Faretta v. California, 422 U.S. 806, 835, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975). The record of the October 9 hearing, including the trial court's detailed explanation of the procedural requirements of self-representation, the dangers of proceeding pro se, the limits of standby counsel, and the fact that Williams was in charge of his own defense, establishes that Williams was well aware of the risks and disadvantages of self-representation. The trial court did not abuse its discretion in finding that Williams knowingly, intelligently, and voluntarily waived his right to counsel and allowing him to

represent himself. See State v. Sinclair, 46 Wn. App. 433, 438, 730 P.2d 742 (1986) ("when the trial court has correctly ruled that substitute counsel will not be appointed and the defendant insists that in the absence of substitute counsel he be permitted to defend pro se, his request must be deemed unequivocal").[1]

## II. Motion to Sever

Williams contends that the trial court abused its discretion in denying his motion to sever the counts involving E.W. and M.W. In Williams's motion to sever, defense counsel maintained that a single trial would be unfairly prejudicial because the jury would likely "accumulate" the evidence. Counsel also argued that the evidence would not be cross-admissible under ER 404(b). The State maintained that the evidence of each count was strong and the counts were easily compartmentalized, that the jury would be instructed to consider each count separately, and that much of the evidence was cross-admissible. The court denied the motion to sever, stating that it was "adopting the State's analysis as set forth in its response."

Offenses properly joined under CrR 4.3.1(a) may be severed if "the court determines that severance will promote a fair determination of the defendant's guilt or innocence." CrR 4.4(b). Defendants seeking severance have the burden of demonstrating that a trial involving all counts "would be so manifestly prejudicial as to outweigh the concern for judicial economy." State v. Bythrow, 114 Wn.2d 713, 718,

---

[1] Because the trial court did not abuse its discretion in permitting Williams to represent himself, we need not address the State's contention that the invited error precludes Williams's challenge to the validity of his waiver of counsel.

790 P.2d 154 (1990). In determining whether the potential for prejudice requires severance, the court must consider

> (1) the strength of the State's evidence on each count; (2) the clarity of defenses as to each count; (3) court instructions to the jury to consider each count separately; and (4) the admissibility of evidence of the other charges even if not joined for trial.

State v. Russell, 125 Wn.2d 24, 63, 882 P.2d 747 (1994). We will reverse the trial court's failure to sever counts only for a manifest abuse of discretion. Bythrow, 114 Wn.2d at 717.

Contrary to Williams's suggestions, the evidence of each count was relatively strong. Both girls generally described distinct incidents that the jury could readily distinguish. Williams's defenses to all charges were similar and not contradictory. Williams relied primarily on a general denial, arguing that both girls' accounts were unreliable and tainted by improper investigative techniques. In addition, the trial court instructed the jury to consider each count separately.

On appeal, Williams's primary contention is that denial of the severance motion was an abuse of discretion because the trial court failed to make a ruling on the record that the evidence would be cross-admissible under ER 404(b). Under ER 404(b), evidence of prior misconduct is not admissible "to show that it is likely the defendant committed the alleged crime, acted in conformity with the prior bad acts when committing the crime, or had a propensity to commit the crime." State v. Wilson, 144 Wn. App. 166, 175, 181 P.3d 887 (2008). Such evidence may, however, be admissible for other purposes, such as demonstrating a common scheme or plan. See State v. Lough, 125 Wn.2d 847, 8524-55, 889 P.2d 487 (1995).

Before admitting evidence of prior misconduct under ER 404(b), the trial court must (1) find by a preponderance of the evidence that the misconduct occurred; (2) identify the purpose for admitting the evidence; (3) determine the relevance of the evidence to prove an element of the charged crime; and (4) weigh the probative value against its prejudicial effect. Gresham, 173 Wn.2d at 421. We review the trial court's decision to admit or exclude evidence under ER 404(b) for an abuse of discretion. State v. Fisher, 165 Wn.2d 727, 745, 202 P.3d 937 (2009).

Williams correctly contends that the trial court failed to carry out its ER 404(b) analysis on the record. See State v. Carleton, 82 Wn. App. 680, 685, 919 P.2d 128 (1996) (trial court's balancing of the prejudicial nature of ER 404(b) evidence must take place on the record). Rather, the court merely adopted the State's written argument opposing severance, which maintained that the evidence involving E.W. and M.W. was cross-admissible. But, the trial court's failure to undertake ER 404(b) balancing on the record is harmless "if the record is sufficient for the reviewing court to determine that the trial court, if it had considered the relative weight of probative value and prejudice, would still have admitted the evidence." Id. at 686.

In order to constitute a common scheme or plan, the evidence of the prior misconduct and the charged crime " 'must demonstrate not merely similarity in results, but such occurrence of common features that the various acts are naturally to be explained as caused by a general plan of which the charged crime and the prior misconduct are the individual manifestations.' " State v. DeVincentis, 150 Wn.2d 11, 19, 74 P.3d 119 (2003) (quoting Lough, 125 Wn.2d at 860). Evidence admitted to

show a common scheme or plan need not be "distinct from common means of committing the charged crime." Gresham, 173 Wn.2d at 423.

Williams exploited his position as a family member and the close proximity of his trailer to begin abusing both E.W. and M.W. He told both girls not to tell anyone about the abuse. Williams also used the promise of gifts or favors to isolate and gain private access to the girls, where he removed their clothing, fondled and kissed their breasts, and digitally penetrated their vaginas. In separate incidents, Williams used a camera to record or view both girls' vaginas.

Despite some differences, the similarities here were sufficient to support a reasonable determination that the charged incidents were "individual manifestations" of the same plan. Gresham, 173 Wn.2d at 423. When the defense is a general denial and credibility a crucial issue, the trial court can reasonably determine that the probative value of evidence of other sex offenses outweighs the potential prejudice. State v. Sexsmith, 138 Wn. App. 497, 506, 157 P.3d 901 (2007).

Moreover, at the time it ruled on the motion to sever, the trial court was thoroughly familiar with the facts of the case and E.W. and M.W.'s testimony, having presided at Williams's first trial. Under the circumstances, including the substantial evidence of a common scheme or plan and the court's expressed reliance on the State's written arguments, we are confident that the court would have reached the same decision had it conducted the ER 404(b) balancing analysis on the record. The trial court did not abuse its discretion in refusing to sever the counts for trial.

III. *In Camera* Review

Williams contends the trial court erred when it denied defense counsel's request to be present and participate in an in camera review of E.W. and M.W.'s school records. He argues that the court's ruling violated his constitutional right to due process.

Prior to trial, Williams moved for a subpoena duces tecum of E.W. and M.W.'s school records. Williams alleged that school officials were present when law enforcement personnel contacted the girls and that school documents pertaining to those contacts likely contained exculpatory evidence about E.W. and M.W.'s credibility. The trial court granted the subpoena duces tecum, subject to the in camera review of the records for discoverable materials.

After the school released the records to the court, counsel for Williams moved for leave to be present and participate in the in camera review. At a hearing on May 6, 2014, the court reported that it had already reviewed all of the documents and found nothing discoverable or helpful to the defense. After describing the materials in detail, the court offered to review them again, but denied defense counsel's request to be present.

On appeal, Williams first contends that the State lacked standing to object to his request for the school records and failed to adequately demonstrate that any particular privilege applied to the school records. He argues that he was therefore entitled to full discovery.

But, Williams fails to provide any references to the record indicating that he raised these issues in the trial court. Nor does he identify the legal arguments that he presented to the trial court or the trial court's rulings on those arguments. We therefore decline to address these contentions for the first time on appeal. See RAP 2.5(a); State v. Russell, 171 Wn.2d 118, 122, 249 P.3d 604 (2011).

Williams also contends the trial court violated his right to due process when it denied his request to be present during the in camera review. The record indicates that Williams did not object to the trial court's decision to review the records in camera. We review the trial court's decision to conduct in camera review for an abuse of discretion. See State v. Diemel, 81 Wn. App. 464, 467, 914 P.2d 779 (1996).

Williams's argument in the trial court rested primarily on Zaal v. State, 326 Md. 54, 602 A.2d 1247 (1992). But, Zaal does not require the trial court to permit counsel to be present during the in camera review of school records. Rather, Zaal held that the trial court "may elect to review the records alone, to conduct the review in the presence of counsel, or to permit review by counsel alone." Id. at 87.

Here, after reviewing the records, the trial court informed the parties in some detail about the nature of the documents. Among other things, the trial court stated that the documents involved evaluations of hearing, vision, phonics, math skills, writing skills, interests, and various standardized assessment forms. After summarizing the materials, the court offered to review them again, but explained

> I saw nothing that I thought was discoverable that would be helpful to
> defense in the presentation of their case, nor did I see anything that I

thought would lead to anything that would be discoverable or helpful. I didn't see anything that related to anything other than educational assessments and there was a strong focus on speech, phonics and articulation. And that was about it.

The trial court then agreed with defense counsel's assessment that "it sounds like we have, in essence, generic school records" and that "[t]here was a series of events that took place in the school that looked as if school personnel was present and if the court saw anything it would have jumped right out."

Given the trial court's detailed summary of the materials it reviewed and defense counsel's acknowledgement of the nature of the materials, Williams fails to demonstrate that the trial court abused its discretion in denying Williams's request to be present during the in camera review.

IV.   Persistent Offender Sentence

Williams contends that the imposition of a sentence under the POAA based on the trial court's finding of a prior qualifying conviction violated his due process and jury trial rights. He contends that the State had to prove prior strike offenses beyond a reasonable doubt to a jury before the court could sentence him as a persistent offender.

Our Supreme Court has repeatedly rejected essentially identical arguments. See, e.g., State v. Witherspoon, 180 Wn.2d 875, 893, 329 P.3d 888 (2014). These decisions are binding on us. See State v. Gore, 101 Wn.2d 481, 487, 681 P.2d 227 (1984).

## V. Statement of Additional Grounds for Review

In his statement of additional grounds for review, Williams appears to challenge the testimony of his brother, who died between the first and second trial. Portions of the brother's testimony were read into the record at the second trial. Although a statement of additional grounds for review need not include references to the record or citations to authority, this court will not consider the defendant's allegations unless they "inform the court of the nature and occurrence of alleged errors." RAP 10.10(c). Williams's allegations regarding the challenged testimony are too conclusory to permit appellate review.

Williams also appears to contend that the trial court erroneously excluded the exculpatory testimony of a witness. But, Williams's arguments rest on allegations that are outside the record and therefore cannot be considered on direct appeal. See State v. McFarland, 127 Wn.2d 322, 337-38, 899 P.2d 1251 (1995).

Affirmed.

WE CONCUR:

-17-