2016 DEC 12 A 8: 50



# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 73643-4-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DAVID JAMES EIMER, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: December 12, 2016 |
| | ) | |

VERELLEN, C.J. — David Eimer appeals his conviction for second degree rape. He contends the trial court violated his right to due process by denying his requests for discovery of the victim's mental health and substance abuse treatment records or for in camera review. But Eimer failed to make a concrete connection between his theory of the case and the potential evidence he hoped to find in the victim's records. Eimer also contends the court erred in limiting cross-examination of the victim about her mental health disorders in order to establish her bad memory. The court allowed Eimer to cross-examine the victim on her bad memory, anxiety, and drug use. But in the absence of any established basis for Eimer's proposition that the victim's disorders affect a person's ability to form and recall memories, the court reasonably found the likelihood of unfair prejudice to the victim from such testimony outweighed any minimal relevance.

Finally, Eimer contends the admission of his jail telephone call recordings violated his right to privacy under article I, section 7 of the Washington State Constitution and should have been suppressed. But Eimer had no reasonable expectation of privacy under these facts, and the communications were therefore not "private affairs" deserving article I, section 7 protection. Therefore, we affirm.

## FACTS

After investigating an unrelated matter at the Great Bear Motel on the evening of April 23, 2013, Tukwila Police Officer Michael Richardson noticed A.P., a 23-year-old woman, walking through the parking lot crying. Officer Richardson asked A.P. if "everything was okay."[1] A.P. told him that she left her phone in room 206 at the motel. Officer Richardson noticed David Eimer and Nathan Everybodytalksabout walking nearby and asked A.P. if they also had been in room 206. A.P. responded affirmatively as she crouched down and continued to cry.

A.P. was distraught because of events that transpired after meeting Eimer and Everybodytalksabout earlier that day. A.P., who was homeless and addicted to heroin, had been sitting outside of a library in Kent, visibly upset. It was the eve of her 21st birthday and she felt lonely. Eimer noticed her and the two began to talk.

During their conversation, A.P. called her mother to ask if she could come home, but her mother refused. A.P. told Eimer that she wanted to find some money to rent a hotel room and get some sleep. As the two continued to talk, a group of Eimer's friends, including Everybodytalksabout, arrived and stated they were headed to a party in Tukwila. A.P. told the men her birthday was the next day, and they invited her to join

---

[1] RP (Apr. 1, 2015) at 655.

2

them to celebrate. A.P. agreed, and the group boarded a bus to Tukwila. After buying beer, the group rented room 206 at the Great Bear Motel and began drinking. Eventually, one of the men left and returned with a bottle of vodka. The men prepared a mixed vodka and juice drink for A.P. and encouraged her to consume it.

Afterward, Everybodytalksabout told A.P. to undress. A.P. refused, but Everybodytalksabout persisted. A.P. felt trapped in the motel room and ultimately undressed. Everybodytalksabout then told A.P. to perform oral sex on Eimer. A.P. again refused, but felt compelled to comply with Everybodytalksabout's demands and kneeled on the ground. Eimer grabbed A.P. by her hair and forced his genitals into her mouth, causing her to gag. The other men watched. A.P. told the men she did not want to continue. She asked where her phone was, but the men told her not to worry about it.

Eimer then grabbed A.P. by the shoulders and pushed her onto the bed. He tried to kiss A.P., who was now crying. When A.P. heard a knock on the motel room's door, she tried to stand up, but Everybodytalksabout told her to sit down and called her a "stupid bitch."[2] Everybodytalksabout grabbed the bottle of vodka and told A.P. to "put your legs up."[3] He spread A.P.'s legs apart and, ignoring her pleas to stop, inserted the neck of the open vodka bottle into her genitals. Eimer continued to try to kiss A.P. and play with her hair, as Everybodytalksabout repeatedly penetrated her with the bottle.

Finally, Everybodytalksabout stopped and A.P. tried to convince the men to let her leave, promising she would not tell anyone what happened. When one of the men eventually opened the motel room's door, A.P. fled, leaving her phone behind. Once

---

[2] RP (Apr. 15, 2015) at 1385.

[3] Id.

outside, A.P. noticed several police cars in the parking lot, and it was there that Officer Richardson approached her.

The police detained Eimer and Everybodytalksabout and searched room 206. They found A.P.'s phone and an empty vodka bottle inside the room. At the scene, A.P. told Officer Leslie Shuck, "[T]hey're going to kill me. They're going to find me, and they are going to kill me."[4] When Officer Shuck asked A.P. why she feared they would kill her, A.P. responded that Eimer told her "not to tell anyone, or else."[5]

An ambulance transported A.P. to the hospital, where a sexual assault nurse examined her. The nurse noticed bruises on A.P.'s shoulders, leg, and knee, as well as redness in her genital area.

The Washington State Patrol Crime Laboratory analyzed the vodka bottle. DNA[6] recovered from the mouth of the bottle matched A.P.'s profile. The laboratory also recovered a DNA mixture on the outside of the bottle that included both A.P.'s profile and a male's, but the trace male DNA was too limited to match.

The State charged Eimer and Everybodytalksabout by amended information with one count of second degree rape and one count of indecent liberties by forcible compulsion.[7] A jury convicted Eimer as charged. The trial court vacated the count of indecent liberties to prevent a violation of double jeopardy principles and imposed a standard range indeterminate sentence of 119 months to life.

---

[4] RP (Apr. 2, 2015) at 828.

[5] Id.

[6] Deoxyribonucleic acid.

[7] Everybodytalksabout resolved his case by guilty plea before Eimer's trial. See Respondent's Br. at 2 n.1.

4

Eimer appeals.

## ANALYSIS

### *Discovery Requests and In Camera Review*

Eimer argues the trial court violated his due process rights by denying his motions for discovery of A.P.'s mental health and substance abuse treatment records or for in camera review. He argues due process required the court to examine the requested records to determine if they contained potentially exculpatory information.[8]

Before trial, Eimer moved for an order compelling the production of A.P.'s mental health and substance abuse treatment records and for in camera review. Eimer argued he had "reason to believe" A.P.'s allegations "may have been affected by mental health and/or substance abuse issues" because her "allegations came suddenly and without warning after she had willingly accompanied the defendants to the motel room in question for purposes of partying."[9]

As to A.P.'s mental health treatment records, Eimer based his motion on the presumption that A.P. "likely had some type of mental health issue(s)" because she was in tears during her encounter with the defendants, she was still distraught after gaining the protection of the police, she reported to hospital staff that she had "no" and/or "unknown" mental health history,[10] and she refused to answer a question during a

---

[8] See Pennsylvania v. Richie, 480 U.S. 39, 57, 107 S. Ct. 989, 94 L. Ed. 2d 40 (1987).

[9] Clerk's Papers (CP) at 8.

[10] It appears A.P. or a member of the hospital's staff filled out a hospital intake form the night of the incident stating A.P. had "no" mental health history. It also appears another intake form was filled out that night, stating A.P. had "unknown" mental health history. The record indicates that the State provided Eimer with copies of these medical

pretrial defense interview as to whether she had a history of mental health problems.[11]

King County Superior Court Judge Suzanne Parisien found these instances were insufficient to justify infringing on A.P.'s privacy interest in her mental health records.

As to the substance abuse treatment records, Eimer cited to A.P.'s explanation that she successfully undertook such treatment in the weeks after the charged incident. His motion was grounded in the assertion that he needed "to know if [A.P.] is correct in asserting that as of May 2013, she no longer has a substance abuse problem" and if she accurately characterized her substance abuse history.[12] Judge Parisien denied Eimer's motion for A.P.'s substance abuse records beyond those already contained in her hospital records from the date of the incident.

Before trial, Eimer moved to "relitigate" Judge Parisien's rulings before Judge Cayce on the basis of "new information."[13] This "new information"[14] was a single instance in a recorded interview with a police detective during which A.P. attributed her inability to remember the specific color of the mixed drink she consumed inside the

---

records during discovery, but that Eimer did not seek to admit either of the records in support of his motions. See RP (Sept. 20, 2013) at 5.

[11] CP at 8.

[12] CP at 10.

[13] See RP (Mar. 23, 2015) at 130 ("But, now recognizing that it exists, I feel compelled to reurge the motion on the basis that that comment was made by her."). See also Appellant's Br. at 14 n.1 ("Counsel for Mr. Eimer was simply asking for re-consideration of an earlier pre-trial ruling in the same case.").

[14] The defense acknowledged it possessed this information at the time of its initial motion, yet asserted "it was not recognized by the defense at that time." RP (Mar. 23, 2015) at 130.

6

motel room to "borderline personality disorder and anxiety and [posttraumatic stress disorder] and some of my drug use"[15] affecting her memory.

Judge Cayce held a hearing on the motion. Focusing on A.P.'s "emotional state" upon first encountering Eimer and later, the police, Eimer argued A.P.'s records were relevant because "an explanation for [A.P.]'s emotional state may well be related to her mental health history, as opposed to being raped, and *we would want to be able to, if there's evidence that supports that position, make use of it.*"[16] Judge Cayce wanted some authority for Eimer's proposition that borderline personality disorder and posttraumatic stress disorder affect a person's ability to form and recall memories. Eimer declined to present any such sources, stating, "Well, at this point I can only say she attributed her bad memory at least in part to that."[17] Judge Cayce denied the motion.

We review a decision whether to conduct an in camera review of privileged[18] records for an abuse of discretion.[19] Before a court infringes on a rape victim's privacy interest in her privileged records, "the defendant must make a particularized showing that such records are likely to contain material relevant to the defense."[20] Evidence is

---

[15] Defense Pretrial Ex. 8 at 30.

[16] RP (Mar. 23, 2015) at 131 (emphasis added).

[17] Id. at 128.

[18] Mental health care records are deemed to be protected from general rules of discovery and admission at trial pursuant to RCW 5.60.060(9), RCW 18.225.105, and RCW 18.83.110. Records of an individual's treatment for drug addiction are, like mental health records, afforded heightened protection from discovery. See RCW 70.96A.150.

[19] State v. Kalakosky, 121 Wn.2d 525, 547-50, 852 P.2d 1064 (1993).

[20] Id. at 550.

7

material only if there is a reasonable probability that it would impact the trial's outcome.[21]

In State v. Kalakosky, the court denied a defendant's request for discovery or in camera review of the victim's counseling notes.[22] The defense request stated only that the "notes may contain details which may exculpate the accused or otherwise be helpful to the defense."[23] The trial court questioned whether the defense's request was "simply a fishing expedition."[24] In the absence of a particularized showing that the records likely contained material relevant to the defense, the court refused to invade the victim's privacy by ordering either disclosure or in camera review of her counseling records.[25]

Similarly, in State v. Diemel, the defendant requested in camera review of the rape victim's counseling records, arguing that she may have told her counselor information about the encounter that he could use for impeachment.[26] This court found that the defendant failed to make the "particularized factual showing" required to meet the Kalakosky threshold.[27] As the court stated in Diemel, merely making a "claim that privileged files might lead to other evidence or may contain information critical to the defense is not sufficient to compel a court to make an in camera inspection."[28]

---

[21] State v. Gregory, 158 Wn.2d 759, 791, 147 P.3d 1201 (2006).

[22] 121 Wn.2d 525, 529-30, 852 P.2d 1064 (1993)

[23] Id. at 544.

[24] Id. at 550.

[25] Id. at 549-50.

[26] 81 Wn. App. 464, 466, 914 P.2d 779 (1996).

[27] Id. at 468-69.

[28] Id. at 469.

8

Eimer attempts to distinguish these cases on the basis that a defendant has greater need of privileged records when a case turns on the credibility of the witness. To this end, he cites State v. Gregory, where our Supreme Court reversed the trial court's denial of an in camera review.[29] In Gregory, the defendant alleged that he and the victim had consensual sex for money.[30] The victim, who had a prior conviction for prostitution, was involved in an ongoing dependency proceeding.[31] The defendant moved for in camera review of the dependency records because they might show relevant prostitution activities of the victim.[32] Key to the court's holding, the defendant made a "concrete connection between his theory of the case and what he expected to find in the dependency files."[33]

Unlike Gregory, where the victim's history provided a plausible basis for the assertion that she consented to have sex for pay, Eimer provided no established basis for his assertion that the mental health or substance abuse treatment records might impeach A.P.'s allegations of sexual assault. The record contains no particularized showing that the victim's disorders affect a person's ability to form and recall memories. Further, the record contains no showing that Eimer had reason to doubt A.P.'s post-incident substance abuse treatment success or her acknowledgement of long term abuse of drugs before that time. Without such showings, it was not reasonable to

---

[29] 158 Wn.2d 759, 794-95, 147 P.3d 1201 (2006).
[30] Id. at 779.
[31] Id. at 779-80.
[32] Id. at 794-95.
[33] Id. at 795 n.15.

9

believe that A.P.'s mental health or substance abuse treatment records would contain material evidence.

We conclude the trial court did not abuse its discretion in requiring some showing of a connection between borderline personality disorder or posttraumatic stress disorder and a person's memory, or between substance abuse treatment and a person's memory, to warrant in camera review of A.P.'s privileged treatment records.

*Cross-Examination*

Eimer also contends the trial court erred in limiting cross-examination of A.P. about her mental health disorders. We disagree.

Decisions regarding the scope of cross-examination are normally left to the sound discretion of the trial court.[34] "A trial court abuses its discretion when its decision is unreasonable or based on untenable grounds."[35]

Eimer sought permission to cross-examine A.P. about her recorded statement to a police detective that her "borderline personality disorder and anxiety and PTSD and some of my drug use" affected her memory.[36] The court allowed Eimer to cross-examine A.P. on her bad memory, anxiety, and drug use. But before allowing questions regarding any mental disorders, the court wanted authority for Eimer's proposition that borderline personality disorder and posttraumatic stress disorder affect a person's ability to form and recall memories.

---

[34] Falk v. Keene Corp., 53 Wn. App. 238, 247, 767 P.2d 576 (1989).

[35] Id.

[36] Defense Pretrial Ex. 8 at 30.

10

We conclude the trial court did not abuse its discretion. Eimer failed to provide the court with any information suggesting that borderline personality disorder or posttraumatic stress disorder has any effect on a person's memory. Further, the trial court did not preclude Eimer from inquiring into A.P.'s bad memory, and A.P. even admitted to her bad memory.[37]

*Jail Phone Call Recordings*

Eimer argues that the admission of his jail telephone call recordings violated his right to privacy under article I, section 7 of the Washington State Constitution. Because Eimer had no reasonable expectation of privacy, his argument fails.

Article I, section 7 of the state constitution provides that "[n]o person shall be disturbed in his private affairs . . . without authority of law." To determine if a certain interest is a private affair, "'a central consideration is the *nature* of the information sought—that is, whether the information obtained . . . reveals intimate or discrete details of a person's life.'"[38]

In State v. Archie, this court held that this privacy interest does not protect "agreed to recordings or to the dissemination of a jail inmate's calls."[39] In State v. Haq, this court explained that "the holding in Archie was based on the defendant's limited privacy rights as a detainee, combined with warnings of possible recording."[40]

---

[37] RP (Apr. 15, 2015) at 1475 ("Sometimes, you know, like I don't remember very much and then I do remember some stuff. It comes up, like that's just how it goes."); RP (Apr. 16, 2015) at 1513 ("my memory isn't perfect").

[38] State v. Haq, 166 Wn. App. 221, 256-57, 268 P.3d 997 (2012) (alterations in original) (quoting State v. Jorden, 160 Wn.2d 121, 126, 156 P.3d 893 (2007)).

[39] 148 Wn. App. 198, 257, 199 P.3d 1005 (2009).

[40] 166 Wn. App. 221, 257-58, 268 P.3d 997 (citing id. at 203-05).

11

In Archie and Haq, signs posted near the telephones warned the inmates that the calls would be recorded, and a recorded message at the beginning of the phone calls provided a similar warning.[41] In those cases, the trial court's admission of jail telephone call recordings did not violate the defendants' privacy rights.

Similarly, Eimer was a detainee at the King County jail. Before he placed a call, a recorded message informed him that the call was "subject to monitoring and recording."[42] Eimer had to "press one to accept this policy or press two to refuse and hang up."[43] When the recipient answered the phone, a recorded message stated,

> Hello this is a prepaid debit call from . . . David[,] an inmate at the King County Detention Facility. To accept this call press zero. To refuse this call hang up. . . . This call is from a correctional facility and is subject to monitoring and recording. After the beep press one to accept this policy or press two to refuse and hang up.[44]

Consequently, admitting the telephone recordings into evidence did not violate Eimer's privacy right.

*Statement of Additional Grounds*

Eimer raises 14 issues in his pro se statement of additional grounds under RAP 10.10. He repeats verbatim the issues already raised in his motion for arrest of judgment and/or for a new trial.[45] The State filed a response to Eimer's motion below. The trial court agreed with the State's analysis and denied Eimer's motion.[46]

---

[41] Archie, 148 Wn. App. at 201; Haq, 166 Wn. App. at 258.

[42] Exhibit 12 at 1.

[43] Id. at 2.

[44] Id.

[45] See CP at 353-61.

[46] RP (June 23, 2015) at 3 ("The motion for arrest of judgment and or a new trial is denied. I agree . . . with the State's analysis of that.").

12

No. 73643-4-I/13

This court limits its review of issues raised in a statement of additional grounds to issues that inform the court of the nature and occurrence of the alleged errors.[47] Eimer fails to address the standard of review for the trial court's denial of his motion. He also fails to explain why the trial court's decision is incorrect, or to provide any new basis for his claims on appeal.

Accordingly, we affirm.

WE CONCUR:

_____

Trichey, J.                          Becker, J.

---

[47] State v. Calvin, 176 Wn. App. 1, 26, 316 P.3d 496 (2013).

13