# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 74254-0-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| OMAR CRUZ VILLASENOR, | ) | |
| DOB: 06/03/1999, | ) | |
| Appellant. | ) | FILED: January 17, 2017 |
| | ) | |

TRICKEY, J. — Omar Cruz Villasenor appeals from the juvenile court's adjudication of guilt for one count of child molestation in the first degree. He contends that the court violated his right to due process by denying his request for discovery of Child Protective Services records or for in camera review. Because Cruz Villasenor failed to make a particularized showing that the records likely contained information useful to the defense, the court did not abuse its discretion in denying his request. We affirm.

## FACTS

The State charged Cruz Villasenor with one count of child molestation in the first degree, allegedly committed between June 1, and July 31, 2012, when Cruz Villasenor was 12 or 13 years old. The complaining witness, J.S., was 7 years old during the charging period.

J.S. and his mother lived with Cruz Villasenor's family for a few months during the charging period. J.S. testified that on one occasion, he was in a bedroom, along with Cruz Villasenor and Cruz Villasenor's two brothers. When asked what

happened, J.S. replied, "I think it's called S-E-X."[1] J.S. explained that both he and Cruz Villasenor had their pants "pulled down"[2] and he saw Cruz Villasenor's penis as he was "putting it in my bottom."[3] J.S. testified that Cruz Villasenor "pushed it back and forth"[4] and that it felt "weird."[5] J.S. also recalled that just before Cruz Villasenor's assault, Cruz Villasenor's two brothers did the "[s]ame thing" and "[p]ut their penis in [J.S.'s] rear end."[6]

J.S. recalled that on one occasion, Cruz Villasenor's mother came into the room while he and Cruz Villasenor had their pants down. Cruz Villasenor's mother denied that she ever found J.S. with his pants down.

J.S.'s mother testified that after she and J.S. moved out of Cruz Villasenor's house, J.S. became "very introspective" and "sad."[7] J.S. would not tell his mother what was bothering him. J.S. eventually told his father about Cruz Villasenor's assault. J.S.'s mother spoke to a detective after she learned of the assault.

On May 7, 2013, J.S.'s mother took him to the emergency room of Seattle Children's Hospital. J.S.'s counselor had recommended the visit because J.S. was experiencing behavior problems. The records of the visit, which were disclosed to the defense during discovery, referred to a mental health evaluation that J.S. received at Children's Hospital on April 17, 2013.

---

[1] Report of Proceedings (RP) (Oct. 13, 2015) at 57.
[2] RP (Oct. 13, 2015) at 58.
[3] RP (Oct. 13, 2015) at 59.
[4] RP (Oct. 13, 2015) at 62.
[5] RP (Oct. 13, 2015) at 62.
[6] RP (Oct. 13, 2015) at 65.
[7] RP (Oct. 13, 2015) at 82.

2

On May 21, 2013, J.S. spoke with Gina Coslett, a child interview specialist, at Dawson Place Child Advocacy Center. During the video recorded interview, J.S. repeated his allegations against Cruz Villasenor and Cruz Villasenor's two brothers, explaining that it happened on two days. J.S. said that Cruz Villasenor threatened to hit him if he ever told anyone. J.S. also told Coslett that his father used to hit him with a belt, but that he had not seen his father since he was 5 years old. J.S. said his mother hits him with a hanger and had caused his lip to bleed when he was 6 years old.

On June 26, 2013, J.S. told Paula Newman-Skomski, a forensic nurse examiner, that Cruz Villasenor and his two brothers "touched [J.S.'s] bottom . . . [w]ith their penises."[8] J.S. said that all three boys had assaulted him at once, that it had hurt, and that it happened two times. Newman-Skomski found no evidence of trauma in J.S.'s rectal area.

After analyzing the factors set forth in State v. Ryan, 103 Wn.2d 165, 691 P.2d 197 (1984), the court found that J.S.'s statements to his mother, to the child interview specialist, and to the forensic nurse examiner were admissible as child hearsay. See also RCW 9A.44.120.

At the conclusion of the trial, the court found Cruz Villasenor guilty as charged. The court imposed a standard range disposition of 15 to 36 weeks confinement. Cruz Villasenor appeals.

---

[8] RP (Oct. 13, 2015) at 113-14.

3

ANALYSIS

Cruz Villasenor contends that the juvenile court violated his due process rights when it refused to review Child Protective Services (CPS) records involving his allegations of parental physical abuse. He argues that the records were "reasonably likely"[9] to contain evidence relevant both to J.S.'s credibility and to the admissibility of J.S.'s child hearsay statements and that the matter must be remanded to the trial court for in camera review.

On December 30, 2014, counsel for Cruz Villasenor moved to compel disclosure of J.S.'s mental health evaluation at Children's Hospital on April 17, 2013. The evaluation was mentioned in the medical records of J.S.'s May 7, 2013 appointment at Children's Hospital. The State provided the May 7 medical records during discovery, but neither the State nor the defense had seen the records of the April evaluation. Cruz Villasenor argued that because the April evaluation occurred about two weeks before J.S.'s disclosure of the alleged sexual abuse to his mother, the records likely included relevant material about his diagnosis and possible medications that would be relevant to his "credibility and memory."[10]

Defense counsel also asserted that CPS was statutorily obligated under RCW 26.44.030 to investigate the allegations of physical abuse that J.S. raised during the video recorded interview with Gina Coslett on May 21, 2013 at Dawson Place Child Advocacy Center. Counsel suggested that the resulting CPS records "may include interviews and reports related to whether his allegations were found to be credible or

---

[9] Br. of Appellant at 11.
[10] Clerk's Papers (CP) at 94.

not."[11] Counsel acknowledged, however, that "it is unknown if [J.S.] was interviewed by CPS and what statements may have been made that relate to this case or to his credibility in general."[12]

After considering the parties' arguments, the court agreed that the defense had established the materiality of the April 2013 mental health evaluation records. After conducting an in camera review, the court found that the records did not satisfy the disclosure standards of CrR 4.7 and declined to release them.

The court also agreed with Cruz Villasenor that under RCW 26.44.030, J.S.'s disclosure of parental physical abuse during the May 21 interview likely triggered a mandatory report to law enforcement or to CPS:

> The Defense [premise], and I think it's sound, is that when the child was interviewed at Dawson Place . . . and made certain disclosures, ones that pertained to the child's parents, that a mandatory report was made either to law enforcement or to CPS, which is -- is what's permitted under the statute, and that one of those two entities took action. It's evident from the briefing that law enforcement followed up with the mom, and that information has been made as part of the discovery. It's available to the parties. I don't perceive any information available on the record before me to infer that in a CPS investigation was either done or was required by law.[13]

Defense counsel acknowledged that she would not characterize the record any differently than the court. Counsel then handed the court a letter that she had just received in response to her subpoena duces tecum to the Department of Social and Health Services (DSHS) for all records relating to J.S. from 2012 through 2014.

---

[11] CP at 94.
[12] CP at 94.
[13] RP (Jan. 9, 2015) at 14-15

5

In the letter, the assistant attorney general explained that the records were currently exempt from release because of "an ongoing CPS investigation."[14]

The court found that given the broad time period of the defense request and the bare reference to an "ongoing CPS investigation," the letter did not provide any specific information about the investigation. The court concluded that the defense had failed to satisfy the "materiality threshold"[15] and denied the motion to release the CPS records. But the denial was without prejudice, and the court advised defense counsel that it would reconsider should additional information become available. During the 10 months remaining before trial began, defense counsel did not attempt to raise the issue of the CPS records.

A criminal defendant has a due process right to review confidential or privileged material under certain circumstances. See CrR 4.7(e); Pennsylvania v. Ritchie, 480 U.S. 39, 58 n.15, 107 S. Ct. 989, 94 L. Ed. 2d 40 (1987). In order to justify in camera review of records that are deemed confidential or privileged by statute, "[the] defendant must make a particularized factual showing that information useful to the defense is likely to be found in the records." State v. Kalakosky, 121 Wn.2d 525, 550, 852 P.2d 1064 (1993); see also State v. Gregory, 158 Wn. 2d 759, 791, 147 P.3d 1201 (2006) (defendant must make a "'plausible showing'" that the information will be both material and favorable to the defense (internal quotation marks omitted) (quoting United States v. Valenzuela-Bernal, 458 U.S. 858, 867, 102 S. Ct. 3440, 73 L. Ed. 2d 1193 (1982))), overruled on other grounds by State v. W.R.,

---

[14] Ex. 1.
[15] RP (Jan. 9, 2015) at 17.

6

181 Wn.2d 757, 336 P.3d 1134 (2014). Evidence is material only if there is a reasonable probability that it would affect the trial's outcome. Gregory, 158 Wn.2d at 791. We review the trial court's decision whether to conduct an in camera review of privileged records for an abuse of discretion. Kalakosky, 121 Wn.2d at 550.

In Kalakosky, the defendant sought in camera review of a rape victim's counseling notes based solely on the assertion that the "'notes may contain details which may exculpate the accused or otherwise be helpful to the defense.'" Kalakosky, 121 Wn.2d at 544. Our Supreme Court affirmed the trial court's determination that the request did not constitute a sufficiently particularized showing that the records likely contained material relevant to the defense. Kalakosky, 121 Wn.2d at 549.

In State v. Diemel, 81 Wn. App. 464, 914 P.2d 779 (1996), the defense moved for in camera review of a rape victim's counseling records, arguing that she might have told her counselor details about the incident that would undermine her credibility. Relying on Kalakosky, this court concluded that the request failed to make the necessary "particularized factual showing":

> A claim that privileged files might lead to other evidence or may contain information critical to the defense is not sufficient to compel a court to make an in camera inspection.

Diemel, 81 Wn. App. at 469.

Cruz Villasenor relies primarily on State v. Gregory, in which our Supreme Court reversed the trial court's denial of in camera review in a prosecution for rape in the first degree. In Gregory, the defendant claimed that he paid the alleged victim for consensual sex. Based on the victim's prior conviction for prostitution and her

acknowledged involvement in dependency proceedings around the time of the alleged offense, the defendant requested an in camera review of the dependency records. The defendant argued that the records might show that the victim, contrary to her assertions, was continuing her prostitution activities.

Our Supreme Court agreed that evidence of "recent, factually similar prostitution" would be reasonably likely to affect the outcome of the trial and that DSHS would have addressed the issue in the dependency proceeding if it was aware of any such activity. Gregory, 158 Wn.2d at 794. Noting that the evidence also indicated that at least one dependency proceeding was active at the time of the alleged rape, the court concluded that the defendant had made a

> more concrete connection [than the defendant in Diemel] between his theory of the case and what he expected to find in the dependency files, i.e., it was reasonable to believe that if [the victim] was still engaging in prostitution in 1998, evidence of that would be reflected in the dependency files and, if so, the reports contained therein could reveal potential witnesses.

Gregory, 158 Wn.2d at 795 n.15.

Here, counsel for Cruz Villasenor expressly acknowledged that there was no specific evidence in the record that J.S.'s disclosure of parental physical abuse resulted in a CPS investigation, much less that J.S. made statements that would have been exculpatory or otherwise helpful to the defense. As the juvenile court observed, the letter from the assistant attorney general provided no meaningful information about the nature of the "ongoing" CPS investigation. The defendant's suggestion that J.S.'s statements during the possible investigation might be material

and exculpatory was therefore highly speculative. Unlike the defendant in Gregory, Cruz Villasenor failed to make a particularized showing or identify a plausible defense theory suggesting that the records of a CPS investigation contained evidence—or would lead to evidence—material and favorable to the defense. The court did not abuse its discretion in denying Cruz Villasenor's motion for in camera review.

At Cruz Villasenor's request, we have independently reviewed the records of J.S.'s April 2013 mental health evaluation. We agree with the juvenile court that the records contain no potentially exculpatory information. Accordingly, the juvenile court did not abuse its discretion by not releasing the documents to the defense. See Casal, 103 Wn.2d 812, 822-23, 699 P.2d 1234 (1985).

Affirmed.

_Trickey, J_

WE CONCUR: