
IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

STATE OF WASHINGTON,     )
    )    No. 35296-0-III
    Respondent,     )
    )
    v.     )
    )
JEFFREY JOSEPH POOL,     )    UNPUBLISHED OPINION
    )
    Appellant.     )

FEARING, J. — Jeffrey Pool challenges his convictions for robbery, assault and kidnapping on the grounds that the trial court excluded permissible evidence and the prosecution committed misconduct. We find no error and affirm.

FACTS

This appeal concerns the prosecution of Jeffrey Pool for armed robbery of Cheney's Dollar Tree Store on May 30, 2015, and July 9, 2016. Pool worked at the Cheney Dollar Tree Store during 2012. During 2015 and 2016, Jeffrey Pool worked as a correctional officer at the Airway Heights Correctional Center. Airway Heights lies thirteen miles north of Cheney. Three miles separated Jeffrey Pool's residence from the Dollar Tree.

On May 30, 2015, Assistant Manager Tom Busby worked the evening shift at the Dollar Tree in Cheney. At 9:00 p.m. after closing, Busby and Mikaela Norrish, another store employee, inventoried store cash registers in the back office when Busby heard a noise inside the store. Busby had assumed no customers remained in the Dollar Tree since he already searched the premises and locked the front doors. Busby opened the office door, and a masked male charged into the room brandishing a pistol.

The hooded male politely informed Tom Busby and Mikaela Norrish: "sorry I have to rob you." Report of Proceedings (RP) at 114. Busby believed the intruder legitimately felt remorse, although the robber threatened the employees with use of his pistol. According to Busby, the trespasser wore a knit cap, with its cap eyes slit, pulled over his face. The courteous menacing man wore a red and black Eastern Washington University sweatshirt, gloves, and black pants.

The veiled thief ordered Tom Busby and Mikaela Norrish to place their cell phones in a safe. The interloper pawed and removed all cash from the tills and the safe. He grabbed $2,500. The masked man then marched Busby and Norrish to the front of the store, locked the front door, and instructed his two captives to march toward the rear of the building while not looking backward.

During the night of May 30, 2015, Cheney Police Sergeant Chris English investigated the Dollar Tree Store robbery. Sergeant English saw and spoke with Matthew Smith and Frank Wolf in a Taco Bell parking lot near the Dollar Tree. Smith

2

and Wolf had parked a vehicle in front of a NAPA Auto Parts store, which lay inside an area cordoned off by law enforcement. Smith and Wolf provided English a written statement in English, which included personal contact information. The pair, according to English, appeared relaxed.

On the night of May 30, Cheney Police Officer Timothy Ewen directed a police dog to track a scent. The dog traced a smell from the Dollar Tree to the NAPA Auto Parts parking lot, where the scent ended. Nevertheless, Sergeant Chris English and Officer Ewen did not deem Matthew Smith and Frank Wolf as viable suspects because neither man wore clothing described by Mikaela Norrish or Tom Busby as being adorned by the robber. Smith stood taller than the man who robbed the Dollar Tree.

Matthew Smith had a warrant for his arrest because of a failure to pay restitution after a 1992 King County juvenile court conviction for kidnapping and robbery. The Cheney Police Department learned of the warrant days later. Frank Wolf carried a felony conviction while a juvenile, which conviction was at least twenty years old. No witness identified the nature of the juvenile conviction.

At some date after May 30, 2015, Cheney Police Detective Sergeant Justin Hobbs attempted to contact Frank Wolf and Matthew Smith, but to no avail. At Jeffrey Pool's trial, Detective Hobbs did not recall how many times he attempted to contact either Wolf or Smith. Hobbs prepared no report about his attempts to contact the two.

On May 31, 2015, the day after the first robbery, an anonymous individual

telephoned the Cheney Police Department to report a suspicious object along State Route 904. Sergeant Chris English and Officer Zebulon Campbell then located a black knit cap on the side of the highway. The cap, with eye holes cut, resembled a ski mask. Mikaela Norrish and Tom Busby identified the cap as the one worn by the Dollar Tree intruder.

We forward thirteen months. On July 9, 2016, at 8:30 p.m., Eric Blazekovic, a Cheney Dollar Tree assistant manager, noticed Jeffrey Pool inside the store. Blazekovic and Pool attended Cheney High School as teenagers and, in 2015, frequented the same gym. Pool wore a motorcycle helmet and dark blue or black clothing. Blazekovic, a motorcycle enthusiast, peered into the store parking lot to view Pool's motorcycle. Blazekovic saw no motorcycle in the lot.

On July 9, 2016, Tom Busby again worked the evening shift at the Dollar Tree Store. Before closing, Busby searched for trespassers on the premises. Busby attempted to enter the employee restroom only to discover someone had blocked the doorway from inside. Busby placed his foot against the door to prevent the prowler from exiting. Busby and the intruder scuffled until the intruder informed Busby he held a gun.

The restroom occupant exited the bathroom, displayed his gun, and searched Tom Busby for weapons. The assailant wore a motorcycle helmet, a gray Eastern Washington University sweatshirt, dark military pants, a police belt, black shoes, and black gloves. He toted a red bag with a black drawstring.

The assailant shoved his gun into the small of Tom Busby's back, restrained

4

Busby's hands with plastic handcuffs, and ushered him toward the store's selling floor.

Busby and his captor encountered store employee Sarah Cousins. Cousins informed the

intruder that customers remained inside the store, so the robber moved Busby and

Cousins to a warehouse in the back of the store. The interloper cut the handcuff ties to

free Busby so that Busby could escort the remaining customers from the store as the

interloper held Cousins captive. Busby waited on the remaining customers.

After the departure of all customers, the robber ordered Tom Busby and Sarah

Cousins to the store office, and he collected cash from the tills and the safe. The thief

also placed Busby's and Cousins' phones inside the safe, directed the two to the

bathroom, and then fled the Dollar Tree.

Tom Busby informed law enforcement that he believed the same individual

robbed the store on both occasions. Busby estimated the robber to stand at 5'10."

On July 9, 2016, Jeffrey Pool rode on his motorcycle on the way to work the

graveyard shift at Airway Heights Corrections Center. The prison did not permit its

employees to store firearms inside the center. Pool asked coworker Dru Searls if he

could store his firearm inside Searls' vehicle. Pool had never before requested this favor

from Searls. Pool lamented to Searls that Pool must work overtime to gain sufficient

cash to purchase a home.

On July 12, 2016, law enforcement arrested Jeffrey Pool at the Airway Heights

Corrections Center. Police also executed a search warrant for Pool's clothing,

deoxyribonucleic acid (DNA), automobile, and residence. Law enforcement seized a box of .9-millimeter bullets from Pool's vehicle's center console. Officers took a black pair of pants and a black long sleeve shirt from the car's trunk. Law enforcement found a Smith & Wesson M&P pistol inside Pool's home. Police also discovered two motorcycle helmets and an Eastern Washington University sweatshirt at the residence.

PROCEDURE

The State of Washington charged Jeffrey Pool with two counts of first degree robbery, four counts of second degree assault, and four counts of kidnapping in the first degree.

Before trial, the State moved in limine to prevent mention of criminal convictions of Matthew Smith and Frank Wolf, the two individuals with whom law enforcement spoke outside the NAPA store adjacent to the Dollar Tree on May 30, 2015. In its written motion, the State sought:

> . . . To prohibit the defense from mentioning the convictions of the witnesses on the stand or any witnesses who were contacted by law enforcement but are not testifying.
> . . . .
> . . . To prohibit the defense introducing irrelevant evidence about non-testifying witnesses or evidence that they acted in conformity therewith [to] the May 2015 robbery.

Clerks Papers (CP) at 32-33 (boldface omitted). During oral argument on the motion in limine, the State conceded that Smith garnered criminal convictions at an earlier age. Nevertheless, the State highlighted the convictions as occurring twenty-four years earlier.

6

The State did not concede that Wolf held prior convictions, but an officer later testified at trial to Wolf having a felony conviction. Neither party has identified the specific crime committed by Wolf.

During its motion in limine argument, the State characterized the convictions of Matthew Smith and Frank Wolf as irrelevant and admissible only for impeachment purposes, under ER 609, if either testified. The State agreed that Jeffrey Pool could introduce evidence concerning the interaction between law enforcement and Smith and Wolf on May 30, 2015, and thereafter, but the State sought preclusion of evidence of the criminal histories. The State did not then distinguish between the fact of the convictions and the crimes of convictions.

In response to the State's motion in limine, Jeffrey Pool emphasized that a dog tracked a scent from the Dollar Tree to the NAPA parking lot, where the officers found Frank Wolf and Matthew Smith. Pool also contended that Smith and Wolf walked to Safeway on the night of the robbery and that law enforcement found the knit cap near the Safeway store. Pool claimed that each man's prior convictions were for burglary and kidnapping, and Pool emphasized that he faced the same charges. Pool's counsel remarked:

> It wasn't found out until a couple days later that these two individuals, by Captain Beghtol, that one in particular had a warrant, outstanding warrant, for this burglary and kidnapping charge, the same charges that Mr. Pool is being referred to.

7

RP at 13-14. Pool characterized the two men as suspects, not witnesses. Thus, Pool stated he did not seek to question about the crimes of conviction in order to impeach the two. Nevertheless, according to Pool, evidence concerning Wolf's and Smith's crimes held relevance to the lack of thoroughness of the police investigation of the Dollar Tree robbery.

At the conclusion of the pretrial hearing, the trial court granted in part and denied in part the State's motion in limine to preclude reference or testimony about Frank Wolf's and Matthew Smith's past. The trial court ruled that Jeffrey Pool could introduce testimony about the pair's past in order to attack the competency of the police investigation. Nevertheless, the defense could not argue that Smith and Wolf committed the Dollar Tree store robberies because they committed similar crimes in the past. The trial court later readdressed its ruling.

During trial, police witnesses testified regarding the depth of the law enforcement investigation into Matthew Smith's and Frank Wolf's possible participation in the May 2015 Dollar Tree store robbery. In response to the State's attorney's questioning, Cheney Police Captain Richard Beghtol declared:

> Q Okay. And did you fill out the paperwork for the lab?
> A I did.
> Q Okay. And so both of the two subjects had felony convictions from 20 or so years ago when they were teenagers?
> A Yes.
> Q Okay. And so at least one of them was in CODIS [Combined DNA Index System] from a conviction 24, 25 years ago?

A  That's correct.

Q  Okay.  And he had a legal financial warrant out for him?

. . . .

A  Yes.

Q  Okay.  Now, was that a warrant for a crime that was out for him?

A  No.

Q  Okay. What kind of warrant was out for Mr. Smith?

. . . .

A  It was for failing to pay restitution from his conviction.

Q  (By Mr. Treece) Okay.  And how old was that warrant?

A  It was issued in 1994.

Q  Okay.  So back in—in 2015, a 21-year-old-warrant?

A  Yes.

Q  Out of which county?

A  Out of King County.

. . . .

Q  Okay.  So to be clear, did Mr. Smith have any warrants out for any type of active crimes?

A  No.  Not that I could find.

. . . .

Q  And besides Mr. Smith's felonies that he committed when he was a juvenile, has he ever committed another crime nationwide?

A  Not that I could find.

. . . .

And Mr. Wolf, the other individual, did he have any warrants out for his arrest?

A  No, he didn't have any warrants.

RP at 517-20.

Defense counsel cross-examined Captain Beghtol regarding Matthew Smith's and

Frank Wolf's felony convictions:

Q  . . . Captain, again, those facts of the prior convictions and the fact of the one individual with two active felony warrants, was that information useful?

A  Yes.

9

Q  Does an officer who encounters an individual and runs and finds out about a felony warrant, does he have the leeway to let that individual go?
A  No.

RP at 626.

During the cross-examination of Captain Richard Beghtol, the State grew concerned that defense counsel might soon ask Beghtol about the label of the crimes committed by Frank Wolf or Matthew Smith.  The trial court questioned defense counsel concerning the questions he intended to ask.  Defense counsel responded that he intended to ask Captain Beghtol to identify the nature of the convictions and the relevance of the particular crimes to the Cheney Police Department investigation.  The State objected to any questioning as to the names of the convictions.  The prosecution commented:

But I think the entire reason he [defense counsel] wants to bring up the robbery and kidnapping is to malign the character of—of this person [Matthew Smith] with a—convictions that are 24 years old.  There is no other purpose to that.
. . . If Mr. Johnson [defense counsel] wants to ask the captain do you know that you were wrong about the nature of the warrants, that's a valid question and he can certainly ask that question.  But in terms of getting to the underlying crime that—that—that what the warrants were for, that's absolutely improper and is absolutely prejudicial to the State.

RP at 564-65.  The trial court responded to the State's objection to identifying the crimes of conviction, and the State's attorney thereafter commented:

THE COURT: You [defense counsel] can ask him [Captain Richard Beghtol] first if you knew of any felony convictions and, secondly, whether those—the nature of those felony convictions caused him to do or not to do anything.  If he says yes, then I think it's fair game that that's why he

10

> included it in here.  But it can't be used to show they [Matthew Smith and Frank Wolf] acted in conformity with that.
>
> MR. TREECE [prosecuting attorney]: Correct, Your Honor.  The prejudice to the State is going to be devastating.  We have a saying that this is a robber kidnapper that those are the charges we have before the Court.

RP at 565.

One might wonder if, based on this ruling, the trial court allowed defense counsel to question Captain Richard Beghtol about the nature of the convictions if Beghtol testified to the relevancy of the nature to the police investigation, as long as counsel did not later argue that Matthew Smith or Frank Wolf acted in conformance with the nature of the convictions in robbing the Dollar Tree store.  The trial court briefly recessed and clarified its ruling.  The trial court ruled that the identification of the convictions possessed relevance because that identity could have influenced the investigation of the Cheney Police Department.  Nevertheless, the court found the information about the kidnapping and robbery to be unduly prejudicial to the State because the jury would conclude that Matthew Smith and Frank Wolf acted in conformity to the convictions at the time of the Dollar Tree Store robberies.  The trial court reasoned that Jeffrey Pool could effectively present his argument about the poor quality of investigation of the crimes by testimony of the earlier felony convictions without identifying the convictions.  The trial court affirmed that defense counsel could question Captain Richard Beghtol about the existence of the decades old felonies, but ordered that no witness be questioned about the nature of the convictions.

The prosecution later questioned Cheney Police Officer Timothy Ewen:

Q  You saw the two individuals in the parking lot from a distance?
A  Correct
Q  Did they match the description of the alleged suspect at all?
A  No.
Q  Do you recall why?
A  I saw them.  Me and Sergeant English, we talked together.  They didn't match the description.

RP at 751-52.  Ewen described Matthew Smith and Frank Wolf as being over six feet tall and not matching the description of the robber given by Tom Busby, a victim of the kidnappings.

During trial, Washington State Patrol DNA forensic scientists Anna Wilson and Alison Walker testified.  According to the witnesses, the State Patrol Laboratory developed a profile from DNA removed from the knit cap law enforcement discovered on the side of the highway and from DNA extracted from Jeffrey Pool.  Walker found Pool to be one of two significant contributors to the cap DNA, when she compared the DNA typing profile of Jeffrey Pool to the DNA mixture extracted from the cap.

Alison Walker testified to her calculation of a likelihood ratio of DNA from the cap DNA matching DNA from Jeffrey Pool.  The likelihood ratio is the ratio of two hypotheses.  In this instance, the first hypothesis represents the chance that Jeffrey Pool and an unknown individual significantly contributed to the DNA profile found on the knit cap.  The second hypothesis represents the chance that two unknown individuals contributed to the DNA found on the cap.  The likelihood ratio weights the two

hypotheses. Walker found the likelihood ratio of 140 times more likely that the DNA

extracted from the knit cap comes from a mixture of Jeffrey Pool and an unknown than

two unrelated individuals selected at random from the United States population.

During closing argument, the prosecution commented:

> And after a DNA sample is taken from Jeffrey Pool, that DNA sample goes to the lab. And when that DNA sample is run against the two major contributors on the mask, there's an interesting—there's an interesting result. It's 140 times more likely that the two major contributors on the mask are Jeffrey Pool and an unknown individual than not. So here's what that means.
> . . . .
> . . . So you have a coin with Jeffrey Pool's face and another face with just a question mark on it. And then on the other side you have two faces with question marks. The science tells us that if today you flip that coin 140 times, 139 times it's Jeffrey Pool and the unknown individual. 140 times more likely that it's Jeffrey Pool's.
> And as Mr. Johnson pointed out, and I was obviously wrong, I called those results in my opening nebulous. That is not at all what the expert testified to. She said no, no, no, no, that's actually moderately strong DNA evidence. Guess what. Go with the expert. That's the—that's the evidence that you have, right?
> But here's the great thing about the science of DNA. There's nobody in the world who disagrees with it. There's nobody in the world who has any alternative theory of DNA. There's no doubt that the DNA was found, right?
> So that means that tomorrow you take out that same coin and you flip it 140 times. 139 times it's still Jeffrey Pool.
> And the next day you take out that coin and you flip it 140 times and 139 times it's still Jeffrey Pool.

RP at 862-64. Defense counsel objected to the prosecution's use of the analogy of a coin

flip. The trial court overruled the objection.

The jury convicted Jeffrey Pool of two counts of first degree robbery, four counts

13

of second degree assault, and four counts of kidnapping in the first degree.

LAW AND ANALYSIS

On appeal, Jeffrey Pool assigns error to the trial court's refusal to permit the jury

to hear evidence of the nature of Frank Wolf's and Matthew Smith's convictions. We

note that neither party presented evidence as to the nature of Frank Wolf's conviction or

convictions, so we limit Pool's assignment of error to contending that the trial court

should have allowed him to elicit, from law enforcement testimony, Smith's convictions

being for kidnapping and robbery. Pool also assigns error to the trial court's refusal to

preclude the prosecution from employing the coin flip analogy during closing. We

address the assignments in such order.

Smith Robbery and Kidnapping Convictions

On appeal, Jeffrey Pool contends the trial court should have permitted the jury to

hear the identity of Matthew Smith's crimes as being kidnapping and robbery because

such evidence related to the Cheney Police Department's investigation of the Dollar Tree

Store robberies. At the same time, in his opening brief, Pool presents argument that the

nature of the crimes constituted permissible other suspect evidence and permissible

character evidence under ER 404(b). Nevertheless, Pool does not expressly assign error

to the trial court's failing to permit the evidence as other suspect evidence or character

evidence.

14

Before addressing the merits of Jeffrey Pool's assignment of error, we review the

State's contention that Jeffrey Pool may not forward this assignment on appeal. The

State claims Pool, under RAP 2.5(a), waived his argument about the evidence bar

because Pool never asked the trial court to be able to present testimony that labeled

Matthew Smith's felonies. The State also contends that, to the extent Pool claims the

identity of the crimes constituted allowable other suspect evidence or character evidence,

Pool impermissibly changes his evidentiary theory of admissibility on appeal.

We disagree with the State's contention that Jeffrey Pool never sought to introduce

evidence of the identity of Matthew Smith's convictions. During the pretrial argument

against the State's motion in limine, Pool referenced the importance of the robbery and

kidnapping convictions of Smith in light of charges that Pool faced. Later, during trial,

when Pool's counsel neared questioning Captain Richard Beghtol about the earlier

convictions, the State objected to questions about the nature of the convictions. Defense

counsel told the trial court that he intended to ask Beghtol to identify the crimes. Defense

counsel argued the relevance of the crimes' identities.

We agree with the State's argument that Jeffrey Pool never sought introduction at

trial of the identity of the crimes as other suspect evidence. A party cannot change

theories of admissibility on appeal. *State v. Mak*, 105 Wn.2d 692, 718-19, 718 P.2d 407

(1986). We are uncertain as to whether Pool forwards, on appeal, the nature of the

crimes as other suspect evidence, but, if so, we decline to entertain such an argument.

15

Pool agrees he cannot change theories on appeal and does not argue any exception to the rule of waiver to allow a change in his argument on appeal.

On appeal, Jeffrey Pool may contend the trial court should have allowed testimony, under ER 404(b), naming the crimes of Matthew Smith as kidnapping and robbery. This evidentiary rule reads:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

ER 404(b). Nevertheless, Pool never forwarded this theory of admissibility before the trial court.

We still must decide whether the trial court should have allowed Jeffrey Pool to inquire from Captain Richard Beghtol or other Cheney Police Department officers as to the nature of Matthew Smith's convictions. The trial court considered this evidence relevant to the investigation of the Dollar Tree Store robberies. The trial court, however, excluded the evidence, under ER 403, because of the undue prejudice to the State. According to the trial court, Jeffrey Pool could impeach the integrity of the Cheney Police Department's investigation by introducing evidence that Matthew Smith was convicted of felonies without naming the felonies.

ER 403 declares:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

We review a trial court's evaluation of relevance under ER 401 and its balancing of probative value against its prejudicial effect or potential to mislead under ER 403 for an abuse of discretion. *State v. Russell*, 125 Wn.2d 24, 78, 882 P.2d 747 (1994). We hold that the trial court did not abuse its discretion when barring the identification of Matthew Smith's crimes because we do not consider such evidence as holding any relevance.

Jeffrey Pool's criminal trial encompassed his guilt or innocence of robbing the Cheney Dollar Tree store and kidnapping its employees, not the thoroughness of the police investigation of the crimes. Generally, law enforcement's investigation lacks relevance to guilt or innocence of the accused. *State v. Edwards*, 131 Wn. App. 611, 128 P.3d 621 (2006); *State v. Johnson*, 61 Wn. App. 539, 811 P.2d 687 (1991); *State v. Aaron*, 57 Wn. App. 277, 787 P.2d 949 (1990). On appeal, Pool does not explain the relevance of the Cheney Police Department's investigation of the Dollar Tree Store crimes to his guilt or innocence of the crimes other than perhaps contending that the police should have questioned Matthew Smith further or extracted his DNA to compare his genetic code to the DNA located on the knit cap because Smith possibly committed the Cheney robberies. Nevertheless, Pool never suggested to the trial court that evidence

17

of Smith's juvenile crimes should be allowed as other suspect evidence. On appeal, he does not present any reason for us to allow him to raise this contention for the first time on appeal.

State Mischaracterization of DNA Evidence

Jeffrey Pool next assigns error to the prosecutor's inclusion, in summation, of an analogy to a coin toss in explaining the DNA's likelihood ratio of 140 to 1. The State's attorney compared the chance of Jeffrey Pool committing the Dollar Tree store crimes as flipping a coin one hundred and forty times. Pool's face on the coin would appear one hundred and thirty-nine times. On appeal, the State concedes error in the analogy. DNA analysis does not convert to a percentage. The State argues that the error did not constitute prosecutorial misconduct.

To establish that a prosecutor committed misconduct during closing argument, the accused must prove that the prosecutor's remarks were both improper and prejudicial in the context of the entire record and the circumstances at trial. *State v. Thorgerson*, 172 Wn.2d 438, 442, 258 P.3d 43 (2011). The prosecutor may not represent to the jury facts not admitted into evidence. *In re Personal Restraint of Glasman*, 175 Wn.2d 696, 705, 286 P.3d 673 (2012). Once proved, prosecutorial misconduct is grounds for reversal when there is a substantial likelihood the improper conduct affected the jury. *State v. Fisher*, 165 Wn.2d 727, 747, 202 P.3d 937 (2009).

No. 35296-0-III
*State v. Pool*

The State contends that, despite scientific error, the prosecution did not utter any facts not in evidence. Instead, according to the State, the State's attorney misconstrued the facts. We do not know whether to characterize a faulty analogy as an error of facts or error of logic. But we need not render such an assessment, because Jeffrey Pool does not show a likelihood that the error impacted the jury verdict. Pool claims prejudice but does not explain how the prosecution's error caused prejudice. Strong evidence, including the DNA evidence, supported the guilty verdicts.

## CONCLUSION

We affirm all of Jeffrey Pool's convictions.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, J.

WE CONCUR:

_____
Korsmo, J.

_____
Pennell, A.C.J.

19