[No. 23422-6-I. Division One. March 19, 1990.]

THE STATE OF WASHINGTON, *Respondent*, v. ANTONIO DON JUAN AARON, *Appellant.*

*Lenell Nussbaum* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Ellen O'Neill–Stephens, Deputy,* for respondent.

FORREST, J.—Antonio Don Juan Aaron appeals from his conviction for burglary in the second degree, alleging the trial court erred in admitting certain testimony and in refusing to grant a limiting instruction. We reverse.

On May 30, 1985, Tina Schwedop returned home from work to find the front door of her house open. She went around the house and looked into the kitchen from a pantry window, where she saw a large man she later identified as Hawaiian or Samoan. She was able to see his face for several seconds after he faced her before he fled from Schwedop's home. Schwedop called her mother from a local convenience store, and the police were notified.

After the police arrived, Schwedop discovered that the front door had been forced open and that a VCR and some jewelry were missing. When Schwedop's stepfather, Michael Trower, returned home, he found the VCR wrapped in a beige–colored shawl in some bushes behind the house. He

took the shawl into the house, and replaced it with a similarly colored towel. Schwedop and Trower then went to a neighbor's house where they informed Pamela Buchanan and Leon Robert of the burglary. They asked Buchanan and Robert to watch for the suspect in case he should return.

At about 1:15 p.m., Buchanan and Robert noticed a car driving slowly near the location of the VCR and decoy towel. A man got out of the car and began looking through the bushes near the VCR, while three other persons stayed inside the car. Buchanan called the police and reported the car's license number. The man got into the car and left after Buchanan and Robert had watched him for about 5 to 7 minutes.

At approximately 1:30 p.m., Seattle Police Officer Christopher Gough stopped the car reported by Buchanan about three blocks from Schwedop's house. Gough noticed a blue jeans jacket on the front seat as the appellant, Aaron, exited the car. Gough obtained the consent of the driver, Frederick Hawthorne, to search the car. He found a watch and two rings in the jacket. They were subsequently identified as property taken from Schwedop's house. Schwedop was brought to the scene and positively identified Aaron as the burglar. Buchanan and Robert positively identified Aaron as the man they had seen searching the bushes.

## HEARSAY ISSUE

Prior to trial, defense counsel moved to exclude testimony from the investigating officer that he was told the defendant was using the blue jeans jacket to push his way through the bushes. Defense counsel noted that the police dispatcher would not be called to testify, the recording of the 911 call had been destroyed and that no witness who observed the defendant would testify that he had used a blue jeans jacket to push through some bushes. He objected that the testimony would be hearsay and would violate Aaron's right of confrontation. The State responded that the evidence would not be offered to prove the truth of the

matter asserted, but instead to show the officer's state of mind in explaining why he acted as he did. The court initially reserved ruling on the objection. During trial, when defense counsel objected to Officer Gough's testimony as to the jeans jacket, the court overruled the objection and refused to grant a limiting instruction.

ER 801(c)[1] permits admission of statements that would otherwise be excludable as hearsay when they are not offered for the truth of their contents but for another relevant purpose. If the legality of the search and seizure was being challenged, either at a suppression hearing or at trial, the information available to the officer as the basis for his action would be relevant and material. However, the officer's state of mind in reacting to the information he learned from the dispatcher is not in issue and does not make "determination of the action more probable or less probable than it would be without the evidence." ER 401. Accordingly, the dispatcher's statement was not relevant for another purpose. It seems clear that the State introduced Officer Gough's testimony solely to suggest to the jury that the jacket containing the watch and jewelry stolen from Schwedop belonged to Aaron.

The State attempts to justify admission of the dispatcher's statement by contending it was anticipating defense counsel's comments made in closing which attempted to impeach the competence of the police investigation. We are unpersuaded by this novel basis for admission of evidence. We note the absence of any Washington case sanctioning the admission of evidence of this character. Indeed, *State v. Murphy*[2] and a number of other

---

[1] "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."

[2] 7 Wn. App. 505, 509, 500 P.2d 1276 (1972).

Washington cases[3] clearly establish the impropriety of admitting such hearsay evidence. As suggested by one commentator, if necessary at trial for the officer to relate historical facts about the case, it would be sufficient for him to report he acted upon "information received."[4] The admission of the testimony was error.

## LIMITING INSTRUCTION

The evidentiary error was compounded by the court's refusal to give the requested limiting instruction. ER 105 states:

> When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly.

The evidence concededly was admitted for a limited purpose. The party against whom it was admitted requested a limiting instruction; the court was obligated to give the instruction. The rule is mandatory.[5] While there may be some doubt as to the efficacy of a limiting instruction in effectively controlling jury deliberations, it is of vital importance that counsel have the benefit of the instruction to stress to the jury that the testimony was admitted only for a limited purpose and may not be considered as evidence of the defendant's guilt. Refusing the instruction was error.

---

[3]*State v. Lowrie,* 14 Wn. App. 408, 542 P.2d 128 (1975), *review denied,* 86 Wn.2d 1010 (1976); *State v. Stamm,* 16 Wn. App. 603, 559 P.2d 1 (1976), *review denied,* 91 Wn.2d 1013 (1977).

[4]E. Cleary, *McCormick on Evidence* § 249, at 733 (3d ed. 1984); *see also* 4 J. Weinstein & M. Berger, *Evidence* § 801(c)[01] (1988); 6 J. Wigmore, *Evidence* § 1789 (1976).

[5]*Sturgeon v. Celotex Corp.,* 52 Wn. App. 609, 623–24, 762 P.2d 1156 (1988); *State v. Simpson,* 22 Wn. App. 572, 575, 590 P.2d 1276 (1979); *State v. Kontrath,* 61 Wn.2d 588, 591–92, 379 P.2d 359 (1963); 5 K. Tegland, Wash. Prac., *Evidence* § 24, at 87 (3d ed. 1989).

## Right of Confrontation

Aaron contends that the State's failure to produce the police dispatcher who took Pamela Buchanan's call and relayed the information to Officer Gough violated his right of confrontation.[6] Producing the dispatcher, however, would not have afforded Aaron a meaningful opportunity to test the truth of Buchanan's assertion about his use of the blue jeans jacket. The witness to be confronted was Pamela Buchanan.

Buchanan testified and was cross–examined. Nonetheless, the confrontation issue arises by reason of the improper admission of testimony about the blue jeans jacket after Buchanan had left the stand without being questioned by either party about her statement to the police dispatcher. Aaron, as disclosed by his motion in limine, knew of the statement. When Buchanan testified, however, the judge had not made a final ruling as to its admissibility. It would be fundamentally unfair to require a defendant to exercise his confrontation right in anticipation of the court's subsequent erroneous admission of contested evidence. This is especially true when exercising his right might well waive a later objection and put damaging testimony before the jury.

## Harmless Error

The State urges that the errors, if any, were harmless. A claim of harmless error should be closely examined where it results from the deliberate effort of the prosecution to get improper evidence before the jury. We find it unnecessary to decide whether, under the unusual circumstances surrounding admission of the hearsay testimony, there was an unconstitutional infringement of the defendant's right of confrontation; the error was not harmless under the nonconstitutional standard. Erroneous

---

[6]Const. art. 1, § 22 (amend. 10); U.S. Const. amend. 6; *State v. Monson,* 113 Wn.2d 833, 840, 784 P.2d 485 (1989); *State v. Parris,* 98 Wn.2d 140, 144, 654 P.2d 77 (1982).

admission of evidence is not reversible unless the appellant can show prejudice.[7] Improperly admitted evidence is prejudicial when it materially affects or presumptively affects the outcome of the trial.[8] This evidence directly tied the defendant to the jacket and hence to possession of items taken in the burglary. Admission of the hearsay evidence and the refusal to give the requested limiting instruction was prejudicial error requiring reversal.

## FINGERPRINT TESTIMONY

Although not necessary for the decision of this case, we will consider Aaron's challenge to the State's testimony in explaining the absence of fingerprints through the testimony of Detective Romarez.

ER 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

The admissibility of expert testimony under this rule depends upon three factors: Whether (1) the witness qualifies as an expert, (2) the opinion is based upon an explanatory theory generally accepted in the scientific community, and (3) the expert testimony would be helpful to the trier of fact.[9] The officer had several years' experience as a patrolman and 2 or 3 months' as a burglary detective. The use of gloves, socks or handkerchiefs to avoid fingerprints is not sophisticated expert testimony and need not meet the rigors of a scientific theory.

[7]*Floyd v. Myers*, 53 Wn.2d 351, 333 P.2d 654 (1959).

[8]*Thomas v. French*, 99 Wn.2d 95, 659 P.2d 1097 (1983); *State v. Sweeney*, 45 Wn. App. 81, 723 P.2d 551 (1986).

[9]*State v. Ciskie*, 110 Wn.2d 263, 270–71, 751 P.2d 1165 (1988); *State v. Allery*, 101 Wn.2d 591, 596, 682 P.2d 312 (1984).

Whether a witness is qualified to testify as an expert is a discretionary question for the trial court.[10] If the reasons are "fairly debatable", the court's exercised discretion will not be reversed on appeal. Although the foundation as to the detective's training and experience was minimal, we find no abuse of discretion.

Reversed and remanded.

SCHOLFIELD and BAKER, JJ., concur.

[10]*Walker v. Bangs,* 92 Wn.2d 854, 601 P.2d 1279 (1979); *Keegan v. Grant Cy. PUD 2,* 34 Wn. App. 274, 661 P.2d 146 (1983).