[No. 60227-6-I.   Division One.   January 12, 2009.]

THE STATE OF WASHINGTON, *Respondent,* v. MICHAEL EUGENE ARCHIE, *Appellant.*

*Thomas M. Kummerow* (of *Washington Appellate Project*), for appellant.

*Daniel T. Satterberg, Prosecuting Attorney*, and *Catherine M. McDowall, Deputy*, for respondent.

¶1 ELLINGTON, J. — Michael Archie was convicted of burglary in the first degree and assault in the second degree. Evidence at trial included recordings of his jail telephone conversations. Archie contends these recordings violated his privacy interests under Washington Constitution article I, section 7 and should have been suppressed. But Archie had no reasonable expectation of privacy under these facts, and the communications were therefore not "private affairs" deserving article I, section 7 protection. We reject Archie's other arguments and affirm.

## BACKGROUND

¶2 For several years, Michael Archie and Anita Bellinger had an on-again-off-again dating relationship. On the evening of April 3, 2006, Archie visited Bellinger twice at her apartment, and each visit ended with the parties arguing and Bellinger asking Archie to leave. Archie returned sometime after midnight. When Bellinger refused to let him in, Archie kicked open the door. Bellinger swung at him with a knife but dropped it. She then grabbed a metal stool, trying to keep Archie at a distance, but she also dropped the stool. Archie punched her in the face, knocking her to the ground. He then stomped and kicked her in the torso multiple times, breaking her ribs. Finally, he picked up the metal stool and beat her with it as she lay on the floor in a fetal position.

¶3 Archie was arrested and charged with first degree burglary and second degree assault. The court issued a pretrial no-contact order that prevented him from contacting Bellinger even if she invited or allowed him to do so. In spite of this order, Archie made numerous phone calls to Bellinger from the King County jail.

¶4 Signs posted near the jail telephones warn that telephone calls are subject to recording and monitoring. When a call is answered, a recorded message announces:

> Hello, this is a call at no expense to you from [(name of inmate as given by inmate)] [an] inmate at the King County Detention Facility. This call will be recorded and subject to monitoring at any time. To accept this call, dial three. To refuse this call, dial nine or hang up now. Thank you for using Public Communication Services. You may begin speaking now.[1]

¶5 After the recorded message plays, the call cannot continue until the recipient dials or presses three. This sequence occurred each time Archie called Bellinger.

¶6 In several of these calls, Archie apologized to Bellinger for his actions and repeatedly urged her to "be by [his] side" regarding the case.[2] Recordings of these calls were admitted at trial. The jury convicted Archie as charged.

¶7 Archie appeals.

## DISCUSSION

¶8 Article I, section 7 of the Washington Constitution provides that "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law."[3] Whether undisputed facts constitute a violation of that constitutional provision is a question of law we review de novo.[4] "Private affairs" are "those privacy interests

---

[1] Report of Proceedings (Feb. 1, 2007) 999-1000.

[2] *Id.* at 1012.

[3] The law is settled that the privacy protections provided by article I, section 7 are qualitatively different from, and in some cases broader than, those provided by the Fourth Amendment. *City of Seattle v. McCready*, 123 Wn.2d 260, 267, 868 P.2d 134 (1994) (citing *State v. Gunwall*, 106 Wn.2d 54, 65, 720 P.2d 808 (1986)). Consequently, it is unnecessary to engage in a *Gunwall* analysis to determine whether a claim under article I, section 7 warrants an inquiry on independent state grounds. *McNabb v. Dep't of Corr.*, 163 Wn.2d 393, 399-400, 180 P.3d 1257 (2008).

[4] *State v. Rankin*, 151 Wn.2d 689, 694, 92 P.3d 202 (2004).

which citizens of this state have held, and should be entitled to hold, safe from government trespass."[5]

¶9 In determining whether a privacy interest merits article I, section 7 protection, we consider several central questions: whether the information obtained via the governmental trespass reveals "intimate or discrete" details of a person's life,[6] what expectation of privacy a person has in the information sought, and whether there are historical protections afforded to the perceived interest.[7] The analysis is not limited to a subjective expectation of privacy in modern times with modern technology[8] and does not rest solely on the legitimacy of a subjective expectation of privacy.[9]

¶10 Washington has a long history of extending strong protections to telephonic communications.[10] Those strong protections do not, however, invariably apply in detention settings.

¶11 The privacy act, chapter 9.73 RCW, prohibits intercepting or recording a private communication transmitted by telephone unless all parties to the communication consent.[11] A communication is private under the act when (1) the parties have a subjective expectation that it is private and (2) that expectation is objectively reasonable.[12] But telephone calls from inmates in state correctional facilities may be intercepted, recorded, or divulged by the department of corrections, provided that the department of corrections adheres to the certain procedures and restric-

---

[5] *State v. Myrick*, 102 Wn.2d 506, 510-11, 688 P.2d 151 (1984).

[6] *State v. Jorden*, 160 Wn.2d 121, 126, 156 P.3d 893 (2007).

[7] *Id.* at 127. Also relevant are the purpose for which the information is acquired and by whom it is kept. *Id.* Here, however, the information is compiled by the government and made available only to law enforcement.

[8] *McCready*, 123 Wn.2d at 270.

[9] *Myrick*, 102 Wn.2d at 513.

[10] See *Gunwall*, 106 Wn.2d at 66.

[11] RCW 9.73.030(1)(a).

[12] *State v. Christensen*, 153 Wn.2d 186, 193, 102 P.3d 789 (2004).

tions. One of these restrictions is that calls be operator announcement type calls, in which the recipient is notified that the call is from a prison inmate, will be recorded, and may be monitored.[13]

¶12 There is no similar provision in the privacy act for telephone calls from inmates in local jails. But in *State v. Modica*,[14] the Washington Supreme Court recently held that recording of a jail inmate's calls to his grandmother did not violate the privacy act where signs were posted near the telephones warning that calls would be recorded, a message informed both Modica and his grandmother that the call would be recorded, and the grandmother was required to press three in order to accept the call.[15] The court concluded that any subjective expectation of privacy was not objectively reasonable under these circumstances.[16]

¶13 The facts here are nearly identical to those in *Modica*. Archie contends, however, that because he was a pretrial detainee protected by the presumption of innocence, the analysis should be different.

¶14 This argument fails. The United States Supreme Court has declined to apply the presumption of innocence in analyzing the constitutionality of various pretrial confinement rules and conditions:

> The presumption of innocence is a doctrine that allocates the burden of proof in criminal trials; it also may serve as an admonishment to the jury to judge an accused's guilt or innocence solely on the evidence adduced at trial and not on the basis of suspicions that may arise from the fact of his arrest, indictment, or custody, or from other matters not introduced as proof at trial. . . . But it has no application to a determination

---

[13] RCW 9.73.095(2)(b).

[14] 164 Wn.2d 83, 186 P.3d 1062 (2008). At oral argument, Archie conceded that *Modica* disposes of his Washington privacy act challenge.

[15] *Id.* at 88.

[16] *Id.*

of the rights of a pretrial detainee during confinement before his trial has even begun.[17]

¶15 Similarly, the Washington State Supreme Court has recognized the need for monitoring inmate communications and has found no invasion of privacy when other forms of inmate communications are inspected so long as inmates have been informed of that likelihood: "[F]or very obvious security reasons, practically every jail and penal institution examines the letters and packages, incoming and outgoing, of all inmates."[18] Moreover, prison regulations prohibit incoming or outgoing mail when the correspondent is an individual with whom contact is restricted by court order.[19]

¶16 These concerns do not depend upon whether the inmate is pre- or posttrial, or whether the communication is by mail or telephone. "[M]aintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees."[20] The King County jail recording system serves important institutional purposes.

¶17 Balancing the circumstances here against the privacy protection usually applied to telephone communications, we are persuaded that Archie's phone calls from the jail were not private affairs deserving of article I, section 7 protection.

¶18 Further, where one participant in a conversation has consented, the recording does not violate article I, section 7.[21] Bellinger expressly consented to recording when she pressed or dialed three to continue the call after the recorded warning. For this reason also, the recordings did not violate article I, section 7.

---

[17] *Bell v. Wolfish*, 441 U.S. 520, 533, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979) (citations omitted).

[18] *State v. Hawkins*, 70 Wn.2d 697, 704, 425 P.2d 390 (1967).

[19] WAC 137-48-040(1)(g).

[20] *Bell*, 441 U.S. at 546.

[21] *State v. Corliss*, 123 Wn.2d 656, 663-64, 870 P.2d 317 (1994).

¶19 The court did not err in denying Archie's motion to suppress.

¶20 Affirmed.

¶21 The balance of this opinion having no precedential value, the panel has determined it should not be published in accordance with RCW 2.06.040.

BECKER and Cox, JJ., concur.

Review denied at 166 Wn.2d 1016 (2009).