IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 72713-3-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| BASHIR ABDIRASHID MOHAMED, MOHAMED ABDI ALI, | ) | |
| Defendants, | ) | PUBLISHED OPINION |
| and | ) | FILED: July 25, 2016 |
| ZAKARIA AWEIS DERE, and each of them, | ) | |
| Appellant. | ) | |

BECKER, J. — A telephone conversation between a jail inmate and a person outside the jail is not a private communication when the participants are advised that the call will be recorded and must confirm their understanding that they are being recorded. A recording of such a conversation is admissible against the noninmate participant as well as against the inmate.

Appellant Zakaria Dere appeals from a robbery conviction. Before the trial, Dere posted bail and was released from custody. Dere received several calls from Mohamed Ali, a codefendant who remained in jail. Their conversations were recorded by the jail's telephone system. The recordings provided evidence

of Dere's complicity in the robbery and were used by the State at trial. Dere assigns error to the denial of his motion to suppress the recordings.

Dere moved to suppress the recordings on the basis that they violated his privacy rights.

Dere first contends admission of the recordings violated the Washington privacy act, chapter 9.73 RCW. Recordings obtained in violation of the act are inadmissible for any purpose at trial. RCW 9.73.050. The act makes it unlawful to intercept or record private communications transmitted by telephone without first obtaining the consent of all participants in the communication. RCW 9.73.030(1); State v. Modica, 164 Wn.2d 83, 87, 186 P.3d 1062 (2008). A communication is private when parties manifest a subjective intention that it be private and where that expectation is reasonable. State v. Christensen, 153 Wn.2d 186, 193, 102 P.3d 789 (2004).

Dere's conversations with Ali were not private communications. Dere and Ali did not have a reasonable expectation of privacy in their telephone conversations because they knew their calls were recorded and subject to monitoring. See Modica, 168 Wn.2d at 88-89.

In Modica, the defendant was arrested and jailed for punching his wife in the face. The defendant called his grandmother from jail to enlist her help in arranging for his wife to evade the prosecutors and not appear in court. Modica, 164 Wn.2d at 87. The jail recorded the calls between the defendant and his grandmother, and the State used the recordings to convict the defendant of witness tampering. The conviction was affirmed against an appeal asserting that

2

the recordings violated the privacy act. Modica, 164 Wn.2d at 86. Because the defendant and his grandmother both knew their calls were recorded and subject to monitoring, the court rejected the argument that the calls were private communications.

In Modica, signs posted near the jail telephones warned that the system recorded every outgoing call and tracked every number dialed. Modica, 164 Wn.2d at 86. An automated message repeated that warning to both those making and receiving the calls. The same was true in this case. Similar signs were posted and a similar warning was given by an automated message. Each time Dere received a call from Ali, the jail telephone system played an automated message stating as follows:

> Hello. This is a free call from [name of inmate], an inmate at King County Correctional Facility. This call is from a correctional facility and is subject to monitoring and recording. If this call is being placed to an attorney, it should not be accepted unless the attorney name and number is on the do not record list. If an attorney name and number is not on the do not record list, this call will be recorded. If the attorney name and number is not on the do not record list, contact the jail immediately and have that attorney's name and number added to the attorney list. After the beep, press 1 to accept this policy or press 2 and hang up.

In Modica, the court noted that the presence of signs or automated recordings "do not, in themselves, defeat a reasonable expectation of privacy." Modica, 164 Wn.2d at 89. "However, because Modica was in jail, because of the need for jail security, and because Modica's calls were not to his lawyer or otherwise privileged, we conclude he had no reasonable expectation of privacy." Modica, 164 Wn.2d at 89. Dere argues that to the extent the Modica rationale depends on the "need for jail security," Modica, 164 Wn.2d at 89, his case is

3

distinguishable because nothing that he and Ali discussed in their recorded conversations had any connection to matters of jail security.

The argument that recordings are inadmissible when they are requested by the prosecutor for the purpose of investigation rather than because of safety concerns was rejected in State v. Haq, 166 Wn. App. 221, 259-60, 268 P.3d 997, review denied, 174 Wn.2d 1004 (2012). The jail records all inmate calls because jail authorities cannot know in advance which calls may contain information pertaining to plans of escape, tampering with witnesses, and other potential breaches of security. Thus, the need for jail security is a generalized rationale. Because an outsider's conversations with an inmate have the potential to affect the security of the jail, the State is not required to identify a security concern individualized to a specific inmate to remove a recorded jail phone call from the realm of private communications.

In Modica, the recordings were admitted against a defendant who was an inmate when he participated in the recorded call. Dere claims that Modica does not govern the admissibility of recordings the State seeks to use against a noninmate. The point of Modica, however, is that except for attorneys, anyone who uses the jail telephone system to carry on a telephone conversation with an inmate is subject to the inmate's diminished expectation of privacy. Just as Modica's grandmother did not have a reasonable expectation that her conversations with him would be private, Dere did not have a reasonable expectation that his conversations with Ali would be private. See Modica, 164 Wn.2d at 88.

4

Dere contends that he did not know his calls were recorded. This argument is foreclosed by findings of fact to which Dere has not assigned error. Dere had been an inmate himself and was aware of the recording policy. Dere and Ali heard the recorded message that each phone call was recorded and subject to monitoring at any time. The message was reinforced by the signs posted near the jail telephone. This evidence established Dere's knowledge that his telephone conversations with Ali would be recorded. Dere suggests that such recordings are analogous to a hidden microphone that intercepts attorney-client communications, but the comparison is inapt. The recordings were not surreptitious, and the conversations between Dere and Ali were not privileged.

Following Modica and Haq, we conclude Dere did not have a reasonable expectation of privacy in his telephone conversations with Ali. Because the calls were not private communications, the privacy act does not apply.

Dere also claims that the recording of his calls from Ali violated his constitutionally protected privacy rights. Article I, section 7 of the Washington Constitution generally protects the privacy of telephone conversations, but calls from a jail inmate are not private affairs deserving of article I, section 7 protection. State v. Archie, 148 Wn. App. 198, 204, 199 P.3d 1005, review denied, 166 Wn.2d 1016 (2009). A jail recording system serves an important institutional security interest and its operation typically demonstrates that at least one participant in a conversation has consented to the recording. Archie, 148 Wn. App. at 204. The inspection of other forms of communication with inmates, such as ingoing and outgoing mail and packages, is not an invasion of a privacy

5

interest protected by the Washington Constitution so long as the inmate is informed of the likelihood of inspection. Archie, 148 Wn. App. at 204. The security concerns are the same whether the inmate is a pretrial detainee or is being incarcerated after trial and they do not depend upon whether the communication is by mail or telephone. Archie, 148 Wn. App. at 204. The facts here are similar to those in Archie, and like in Archie, there was both notice and consent. The trial court found that both Ali and Dere "expressly consented to the recording" when they pressed the number that allowed the call to continue after they heard the automated message quoted above.

Likewise, a warrantless monitoring of conversations does not violate the Fourth Amendment to the United States Constitution when one party to the conversation gives consent. State v. Corliss, 123 Wn.2d 656, 663, 870 P.2d 317 (1994). The practice of automatically taping and randomly monitoring telephone calls of inmates in the interest of institutional security is not an unreasonable invasion of the privacy rights of pretrial detainees. United States v. Willoughby, 860 F.2d 15, 21 (2d Cir. 1988), cert. denied, 488 U.S. 1033 (1989). Willoughby rules out Dere's contention that under the Fourth Amendment his own privacy rights as a noninmate were entitled to greater protection than Ali's. "Contacts between inmates and noninmates may justify otherwise impermissible intrusions into the noninmates' privacy," given the strong interest in preserving institutional security. Willoughby, 860 F.2d at 21-22.

Dere compares the State's use of the recordings as a tool of investigation to the warrantless search of a cellphone in Riley v. California, ___ U.S. ___, 134

S. Ct. 2473, 189 L. Ed. 2d 430 (2014), and the warrantless eavesdropping described in Katz v. United States, 389 U.S. 347, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967). Those cases are inapposite. Consent is a well-recognized exception to the warrant requirement. See Katz, 389 U.S. at 358 n.22. Dere consented to having his conversation recorded.

Following Archie and Willoughby, we conclude there was no violation of Dere's constitutional privacy interests.

Dere also assigns error to evidentiary rulings. Over Dere's hearsay objection, an officer was allowed to testify that the victim of the robbery, a cab driver, provided the license plate number of the car seen driving away from the scene. The significance of the license plate was that the police later located the car at the address where it was registered and arrested Dere when he got into the car and started driving away.

The cab driver had not actually seen the license plate; he had obtained the number from another witness. Dere contends the officer's testimony was evidence of the type ruled inadmissible in State v. Aaron, 57 Wn. App. 277, 787 P.2d 949 (1990). Aaron is dissimilar. The error in Aaron was allowing an officer to repeat hearsay linking the defendant to a burglary. The admission of such evidence cannot be justified on the basis that it merely explained why the officer acted as he did. Aaron, 57 Wn. App at 279-80. The officer in this case had personal knowledge that the police obtained the plate number from the victim. We find no error.

Dere's reply brief addresses the license plate testimony as a violation of his constitutional right to confront the witness who actually did see the license plate on the night of the robbery but who did not testify. Because this argument was not made in the opening brief, we do not consider it. Norcon Builders, LLC v. GMP Homes VG, LLC, 161 Wn. App. 474, 497, 254 P.3d 835 (2011).

Dere also contends the trial court admitted testimony that amounted to an improper opinion on his guilt. A third participant in the robbery, Bashir Mohamed, testified against Dere after reaching a plea agreement with the State. Mohamed testified that he hit the victim while Dere demanded money. When the prosecutor asked Mohamed whether the victim fled from the crime scene "as a direct result of what you and Mr. Dere were doing together," Mohamed answered in the affirmative.

According to Dere, the State's line of questioning was akin to asking Mohamed whether Dere intended to commit the robbery. Dere did not object on this basis below. But in any event, Mohamed's testimony did not manifestly amount to an express opinion that Dere was guilty or had criminal intent. It was based upon his own observations and helpful to an understanding of facts at issue. See ER 701. We reject the argument.

Affirmed.

Becker, J.

WE CONCUR:

Leach, J.          Schindler, J.