# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| JAMIE WALLIN, | No. 58968-1-II |
| Appellant, | |
| v. | |
| DEPARTMENT OF CORRECTIONS, | UNPUBLISHED OPINION |
| Respondent. | |

MAXA, P.J. – In this action under the Public Records Act (PRA), chapter 42.56 RCW, Jamie Wallin appeals the trial court's entry of a default judgment, the trial court's entry of a permanent injunction pursuant to RCW 42.56.565 precluding Wallin from making further PRA requests without court approval, and various other trial court rulings.

Wallin is an inmate serving a sentence of life without the possibility of release or parole. He submitted two PRA requests to the Department of Corrections (DOC) for rejection notices for certain electronic messages, and he filed suit against DOC to compel production of the records. DOC responded to Wallin's PRA lawsuit with a counterclaim, asserting that Wallin made his PRA requests for the purpose of harassing DOC. DOC sought a permanent injunction against Wallin under RCW 42.56.565.

DOC attempted to depose Wallin to inquire about his reasons for making the PRA requests. Over Wallin's objection, the trial court ordered Wallin to attend the deposition. When

Wallin violated the court's order and refused to attend the deposition, the court entered a default judgment against him. The court subsequently entered a permanent injunction under RCW 42.56.565 enjoining Wallin from inspecting the requested records and prohibiting him from making any other PRA requests without prior approval from the court.

We hold that (1) the trial court did not err in denying Wallin's CR 12(b)(6) motion to dismiss DOC's counterclaim; (2) the trial court did not err in allowing DOC to amend its counterclaim; (3) the trial court did not err in compelling Wallin to attend a deposition; (4) the trial court did not err when it entered a default judgment against Wallin based on his refusal to attend the deposition; (5) the trial court did not err when it entered a permanent injunction against Wallin because DOC showed by a preponderance of the evidence that Wallin had submitted PRA requests with the intent to harass the agency and make a profit from subsequent PRA litigation; (6) Wallin has not shown that the trial court was biased against him; (7) given our holdings affirming the default judgment and permanent injunction, Wallin's challenges to the trial court's other orders are moot; and (8) Wallin's appeal was not frivolous for purposes of RCW 4.24.430.

Accordingly, we affirm the trial court's entry of a default judgment and a permanent injunction against Wallin.

FACTS

*Background*

Wallin is incarcerated in DOC pursuant to a criminal conviction, serving a sentence of life without the possibility of release or parole. In January 2021, Wallin sent a records request to DOC for rejection notices he received from DOC for electronic messages sent through JPay, a third party that provides electronic messaging services to DOC inmates. He also requested

2

records showing DOC's last purchase of postage paid envelopes from the United States Postal Service (USPS). DOC denied the request for JPay rejection notices because they did not constitute public records under the PRA. DOC produced USPS records, but redacted USPS customer account numbers because they related to bank accounts or other similar financial information.

In July 2021, Wallin sent DOC a second records request for eight additional JPay rejection notices. DOC sent him four of the rejection notices and closed the request.

*PRA Lawsuit*

In April 2022, Wallin filed a PRA complaint against DOC. He alleged that DOC violated the PRA and acted in bad faith when they denied him the right to inspect the JPay rejection notices.

In an amended answer, DOC denied Wallin's allegations and asserted a counterclaim. DOC alleged that Wallin had solicited persons to send him explicit messages through JPay anticipating that they would be rejected, and requested the rejection notices under the PRA in order to harass DOC. DOC claimed that Wallin already had received the records he requested and DOC asked for injunctive relief under RCW 42.56.565 to prevent Wallin from submitting future PRA requests for the same records.

Wallin subsequently filed several motions. He moved for sanctions against DOC under CR 11 for filing their counterclaim, which he claimed contained false allegations. Wallin also filed a motion asking the trial court to compel DOC to show cause for why DOC refused to grant him relief under the PRA. Finally, Wallin filed a CR 12(b)(6) motion to dismiss DOC's counterclaim.

The trial court granted DOC's motion to strike the hearing date for Wallin's motion to show cause. The court also denied Wallin's motion for sanctions and his CR 12(b)(6) motion to dismiss DOC's counterclaim.

*Discovery*

DOC moved for leave to depose Wallin remotely pursuant to CR 30(a), which states that depositions of persons confined in prison may only be taken by leave of the court. DOC sought to question Wallin about issues related to Wallin's claims and DOC's counterclaim. DOC also propounded interrogatories, requests for production, and requests for admission to Wallin.

Wallin filed an objection to DOC's pending discovery and moved for a protective order under CR 26(c). Several of the interrogatories asked Wallin to explain why he had requested the records at issue. Several of the requests for production asked Wallin to produce the JPay rejection notices he had requested. DOC also propounded requests for admission that asked Wallin to admit that he possessed the JPay rejection notices when he made a PRA request for them.

DOC argued that the trial court should deny Wallin's motion for a protective order because RCW 42.56.565 allows courts to investigate whether Wallin already possessed the JPay rejection notices he sought in his PRA request. DOC argued that if Wallin already possessed the notices, his PRA requests amounted to harassment under the statute. The court denied Wallin's motion for a protective order.

Wallin also filed an objection to DOC's motion for leave to depose him, again arguing that DOC's discovery efforts in support of its counterclaim were intended to harass him. The trial court granted DOC's motion to depose Wallin remotely.

4

*JPay Subpoena*

DOC's attorney sent a subpoena to JPay to permit inspection and copying of all JPay electronic communications sent or received by Wallin from January 1, 2020 to June 22, 2022, the date of the subpoena. Wallin objected, arguing that his JPay messages were private communications protected by his right to privacy under article I, section 7 of the Washington Constitution. Wallin also moved to quash the JPay subpoena. He argued that the electronic messages DOC sought through the subpoena were privileged and protected and could not be disclosed.

In response, DOC argued that Wallin had waived any claim to privacy or privilege in JPay records because, in order to access JPay services, Wallin acknowledged and accepted JPay's terms and conditions. JPay's terms and conditions state, "All email, correspondence, and communications, including video connect, between you and others in connection with your use of the services are subject to monitoring, recording, interception and disclosure, and are not protected by attorney-client privilege." Clerk's Papers (CP) at 167. DOC also argued that the JPay subpoena was reasonable and directly related to their counterclaim. Finally, DOC argued that Wallin's constitutional argument lacked merit, because even if Wallin had not waived his rights by using JPay, JPay records still would be subject to the subpoena because the civil rules provide the authority of law. The trial court denied Wallin's motion to quash.

JPay produced the records subject to DOC's subpoena. The records included electronic messages between Wallin and various family members. Below are messages that Wallin sent:

> One month ago I sent you an email regarding my need to hire an assistant to help me with my administrative needs related to my civil litigation and other matters. . . . I need to know definitively whether someone you know might be an option for me, or if I need to continue my search. Finding someone is really important to me. *My litigation is what allows me to help our family financially, especially grandma.*

An assistant would allow me to expand that ability in meaningful ways. So if you know someone, please talk to them. If you can't, or won't, then I need to move on.

CP at 777 (emphasis added).

But I also want to thank you for helping me find an administrative assistant. I want to share with you the importance of that. Because I engage in civil litigation, it requires certain needs I can only accomplish using a third party. Without meeting those litigation needs, I cannot obtain the financial resources to help grandma. She is my first and greatest priority. I know you understand that. *Without an assistant, I am precluded from helping grandma because I cannot continue my litigation efforts. That means no more funds coming in.* A lot of what I've received I have given to my family (grandma, Greg and Betty, Jaden, dad, mom, you and the boys). Without an assistant, my ability to help others ends. So that's how important it is. *I want to be able to continue to financially secure grandma.* If you help me find someone, I can continue to do that. Thank you.

CP at 779 (emphasis added).

Wallin acknowledged that he had engaged in PRA litigation for several years:

As a result of my attorney closing his practice, I am in need of another one. So my inquiry to you is to find out if you happen to know of any in the Everett or Marysville area? Please allow me to give a quick explanation of my specific need. *I have been involved in the public records arena (which includes litigation) for ten years.* To further my endeavors and streamline my efforts, I hired a civil attorney from Spokane two and a half years ago. He provided me the legal administrative services I needed, which included his receipt of the records I requested from the various public agencies, and forwarding those for my review.

CP at 781 (emphasis added).

The only remaining dispute about the videos is the format the records should be produced in. So I will address that further with the court. But I am proud of myself. It is the second novel decision (meaning, only one to do so in the country) I have secured *in my nine years of litigating*. Wait, do you hear that?? I hear a horn tooting . . . LOL.

CP at 800 (emphasis added).

*Motion to Amend Counterclaim*

In November 2022, DOC filed a motion for leave to file a second amended answer and counterclaim. DOC sought to amend their complaint to add facts from the JPay messages that

6

they obtained pursuant to their subpoena, which demonstrated Wallin's history of filing PRA

requests as part of a scheme where he requests records for which he has no legitimate need, sues

agencies, and makes a profit from the lawsuit.

Wallin objected to DOC's motion for leave to file an amended counterclaim. He argued

that the amendment would be improper because the new claim did not relate back under CR

15(c) and that the amendment was untimely.

In reply, DOC argued that the amended counterclaim related back to the original

counterclaim under CR 15(c) because it involved an allegation that Wallin met the requirements

for an injunction under RCW 42.56.565. DOC also argued that they were permitted to inquire

into Wallin's motives for other PRA requests because RCW 42.56.565(3) specifically allowed it.

The trial court granted DOC's motion for leave to file an amended counterclaim. Wallin

filed a motion for reconsideration, which the court denied.

*Wallin's Summary Judgment Motion*

Wallin filed a motion for summary judgment to dismiss DOC's counterclaim. He argued

that DOC violated the PRA by failing to produce the documents he requested.

The trial court entered an order granting DOC's motion to strike the hearing date on

Wallin's motion for summary judgment and continuing Wallin's motion for summary judgment

to a date not earlier than March 31, 2023. The trial court noted that waiting until March 31

would allow time for Wallin to comply with the court's order to compelling discovery, for

Wallin to respond to DOC's second discovery requests, and for DOC to depose Wallin.

*Subsequent Discovery*

On February 14, Wallin filed a second motion for a protective order and for sanctions

against DOC. He asked the court to issue an order protecting him from attending his deposition

and responding to DOC's second discovery requests, and preventing DOC from using the information that it obtained pursuant to the JPay subpoena.

The trial court entered an order denying Wallin's second motion for a protective order and for sanctions against DOC. The court ordered Wallin to provide responses to DOC's first and second sets of interrogatories.

On March 13, 2023 DOC served Wallin with a notice of deposition to take place on March 27. Wallin filed an objection to the deposition notice. He argued that DOC had failed to pre-arrange a date and time for the deposition with him before sending him notice. Wallin claimed that the deposition was intended to harass him. Finally, Wallin argued that DOC's proposed questions would violate the attorney client privilege.

On March 16, DOC received a message from Wallin informing them that he would not attend the scheduled deposition. On March 27, DOC received an email from prison staff stating that Wallin refused to attend the deposition that had been scheduled for that date.

*Default Judgment*

DOC moved under CR 43(f)(3) to strike Wallin's complaint, deem Wallin's answer waived, deem the allegations made in DOC's counterclaim admitted, and enter a judgment against Wallin. DOC argued that the trial court could strike Wallin's pleadings under CR 43(f)(3) because Wallin had refused to give testimony. DOC also argued that the court should exercise its discretion to strike Wallin's pleadings because he willfully refused to attend his deposition, which resulted in prejudice against DOC, and because lesser sanctions were not sufficient.

The trial court entered an order granting in part and denying in part DOC's CR 43(f)(3) motion. The court found that Wallin's refusal to attend his March 27 deposition was willful and

8

deliberate given the facts that the court had granted DOC leave to depose Wallin in July 2022 and Wallin's two motions for a protective order were denied. The court found that Wallin's failure to attend the deposition substantially prejudiced DOC in its ability to prepare a motion for injunctive relief. The court considered the factors set forth in *Burnet v. Spokane Ambulance*, 131 Wn.2d 484, 494-97, 933 P.2d 1036 (1997), and decided to impose a lesser sanction than that requested by DOC. The court ordered Wallin to attend his deposition. The court noted that RCW 42.56.565 allows inquiry into other public record requests made by inmates when considering whether to impose an injunction. Accordingly, the court ordered Wallin to answer questions in the deposition about his motives for filing past and present public record requests and to answer questions about his JPay messages that DOC obtained via subpoena.

On April 14, DOC served Wallin with another notice of deposition upon oral examination to take place on April 20. Wallin filed an objection to the deposition. He objected to DOC's use of his JPay messages as exhibits. Wallin also argued that DOC's intended form of questioning would violate attorney client privilege. On April 17, DOC received an email from staff at Wallin's prison informing them that Wallin did not intend to attend the deposition on April 20. Wallin did not appear for the deposition.

On April 25, DOC filed a motion for a default judgment. DOC explained that Wallin had failed to attend the April 20 deposition. DOC argued that the trial court should enter default judgment against Wallin as a sanction for failing to attend the deposition. Wallin filed a response to DOC's motion for default judgment, arguing that the PRA prohibits inquiry into requestor's motives. Wallin claimed that the trial court had refused to obey the law and again argued that DOC's subpoena to JPay was invalid.

The trial court granted DOC's motion for a default judgment. Considering the *Burnet* factors, the court found that Wallin willfully and deliberately refused to attend the second deposition after being ordered to do so by the court. The court stated that Wallin's refusal to attend the deposition substantially prejudiced DOC and prevented them from obtaining information that could lead to an even more severe permanent injunction under RCW 42.56.565. The court stated that it had considered lesser sanctions of limiting or precluding testimony, but concluded that it would not have an effect on Wallin. Regarding monetary sanctions, the court noted that Wallin had moved for and received a waiver of filing fees due to his indigency, so monetary sanctions would not likely have an effect on him given his sentence of life without the possibility of parole.

The trial court struck Wallin's complaint, deemed Wallin's right to file an answer to DOC's second amended answer and counterclaim waived, and deemed the allegations in DOC's counterclaim admitted. The court set a deadline for DOC to submit briefing and evidence in support of findings of fact and conclusions of law for the injunctive relief it requested in the matter, as well as a proposed permanent injunction and judgment.

*Permanent Injunction*

On May 19, the trial court entered an order granting a permanent injunction. The order included extensive findings of fact and conclusions of law.

The trial court found that Wallin was engaged in a scheme in which he made requests for records from DOC and other public agencies that he already possessed or for which he had no need for any legitimate purpose. Wallin requested records that were controversial or whose status was unclear under the law in order to set agencies up for lawsuits. He then sued the

10

agencies with the intent of making a profit for the purpose of giving money to his family members.

The trial court found that Wallin recruited and retained administrative assistants outside of prison to help him manage and store documents produced in PRA requests, assist him with litigation, and to open a checking account where he could deposit the profits from his lawsuits. Wallin drafted a contract to govern his business relationship with the assistants and their participation in his PRA litigation strategy.

The trial court found that in 2019, Wallin learned of a case in which another inmate brought a PRA lawsuit against DOC. Wallin believed that the case held that JPay rejection notices are public records. Based on that understanding, Wallin solicited people outside of prison to send him sexually explicit messages through JPay with the intention of having them rejected by prison authorities. Wallin did this in order to receive the rejection notices and subsequently request the notices through PRA requests.

The trial court found that before this case, Wallin was involved in at least two other PRA lawsuits. The first was in 2018, when Wallin sued the City of Everett over his PRA request for, among other things, video recordings and photos related to an investigation of coffee stands that were staffed by scantily clad women and girls. In making this request, Wallin attempted to raise a controversial or novel issue in order to sue the City and make money through a PRA lawsuit.

The second lawsuit was in March 2020, when Wallin filed a lawsuit against DOC based on DOC's response to a public records request for all sex offender treatment records for people incarcerated at the Washington Corrections Center for Women. This was another attempt by Wallin to raise a novel legal issue and make money through PRA litigation.

The trial court entered the following conclusions of law:

11

> 1. An inmate harasses an agency for purposes of RCW 42.56.565(2)(c)(i) when they make burdensome requests for purposes of financial gain.
> . . . .
> 4. [DOC] has met the requirements for a permanent injunction under RCW 42.56.565(2)(c)(i), (ii), and (iv).
> 5. Given Mr. Wallin's past and ongoing use of the PRA to harass and intimidate multiple agencies, including DOC and its employees, it is necessary and appropriate to issue a permanent injunction to prevent Mr. Wallin's ongoing and persistent abuse of the PRA. The injunction will bar Mr. Wallin from making any request to the Department or any other agency for the duration of his incarceration, subject to the exceptions outlined below. This injunction is necessary and appropriate to prevent Mr. Wallin from continuing to use the PRA to harass the Department and other agencies.

CP at 650-51.

> The permanent injunction included the following orders:
>
> 1. Mr. Wallin is enjoined from inspection or copying of the Public Records Requests that form the basis of his Complaint in this matter, including P-17936 and P-22455;
> 2. Mr. Wallin is prohibited from requesting to inspect, copy, or receive public records pursuant to the PRA from the Department and other agencies within the meaning of RCW 42.56.010(1) for the duration of his incarceration absent prior approval from the court. However, this injunction does not prevent Mr. Wallin one time per year from inspecting his own DOC central file under the rules in effect at the time of such request that allow inmates to inspect their own central file;
> 3. Mr. Wallin is prohibited from receiving any records to any public records requests submitted by him to the Department or any other agency within the meaning of RCW 42.56.010(1), including requests that he has previously submitted to the Department or to other agencies. The Department and other agencies have no obligation to respond to any of Mr. Wallin's pending public records requests;
> 4. Mr. Wallin is prohibited from requesting and soliciting or directing others to request information that he is barred from receiving under this order;
> 5. All persons who are aware of this order, have been served with this order, or otherwise provided notice of this order, and who violate or assist or participate in the violation of this order may be subject to contempt. Upon the motion of Defendant or by the Courts' own initiative, any party found to be in willful violation of this order may be required to appear and show cause why they should not be held in contempt.

CP at 651-52. The court stated that in 10 years, Wallin could file a motion requesting a hearing to lift the injunction.

12

Wallin appeals the trial court's entry of the default judgment, entry of the permanent injunction, and multiple trial court rulings.

ANALYSIS

A.    WALLIN'S CR 12(b)(6) MOTION

Wallin argues that the trial court erred in denying his CR 12(b)(6) motion to dismiss DOC's counterclaim. We disagree.

CR 12(b)(6) provides a defense to a claim for "failure to state a claim upon which relief can be granted." However, DOC's original counterclaim clearly stated a claim for which relief could be granted under RCW 42.56.565(2). Therefore, we reject this argument.

B.    AMENDMENT OF COUNTERCLAIM

Wallin argues that the trial court erred in allowing DOC to amend its counterclaim. We disagree.

CR 15(c) provides that, when a claim "asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading." DOC's second amended complaint related back to the original pleading. It included additional facts supporting DOC's argument that Wallin met the requirements for an injunction under RCW 42.56.565. Therefore, we reject this argument. For the same reason, the trial court did not err in denying Wallin's motion for reconsideration on this issue.

C.    ORDER COMPELLING DEPOSITION

Wallin argues that the trial court erred in compelling him to attend a deposition because (1) requiring him to answer questions about his motive for requesting the public records violated the PRA, which prohibits an agency from asking the purpose for making a request for public

13

records; and (2) allowing DOC to question him about his private JPay messages violated his right to privacy. We disagree.

1.    Purpose of Request

Wallin relies on RCW 42.56.080(2), which states that a person requesting public records "shall not be required to provide information as to the purpose for the request." He cites several cases for the proposition that an agency may not inquire into the reason for a PRA request. *E.g.*, *Cornu-Labat v. Hospital Dist. No. 2 Grant County*, 177 Wn.2d 221, 240, 298 P.3d 741(2013).

RCW 42.56.080(2) relates to the production of records. That provision makes clear that an agency cannot deny a records request based on the purpose of the request. However, RCW 42.56.080(2) does not state that the purpose of the request is immaterial in all circumstances. In fact, RCW 42.56.080(2) expressly states that this general rule does not apply to a "statute which exempts or prohibits disclosure of specific information or records to certain persons."

RCW 42.56.565(2), the basis for DOC's counterclaim, is such a statute. RCW 42.56.565(2) states that persons serving criminal sentences can be enjoined from inspecting or copying public records under certain circumstances. Therefore, the second part of RCW 42.56.080(2) applies. Under RCW 42.56.565(3)(c), one of the factors a trial court can consider in deciding whether to issue an injunction is "[s]tatements offered by the requestor concerning the purpose for the request."

When an agency is seeking an injunction under RCW 42.56.565(2), RCW 42.56.565(3)(c) makes a requestor's purpose in making a PRA request directly relevant. And CR 26(b)(1) allows discovery "regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." Therefore, we conclude that the trial court did

not err in denying Wallin's motion for a protective order and requiring Wallin to attend a deposition and to answer questions about his motive for making the PRA request to DOC.

>    2.    JPay Subpoena

Wallin argues that DOC obtaining his JPay electronic messages and attempting to question him about them violated his right to privacy under article I, section 7 of the Washington Constitution. He claims that the messages between him and his friends and family were private.

However, communications with inmates are not private matters entitled to protection under article I, section 7. *State v. Mohamed*, 195 Wn. App. 161, 166, 380 P.3d 603 (2016).

>    A jail recording system serves an important institutional security interest and its operation typically demonstrates that at least one participant in a conversation has consented to the recording. The inspection of other forms of communication with inmates, such as ingoing and outgoing mail and packages, is not an invasion of a privacy interest protected by the Washington Constitution so long as the inmate is informed of the likelihood of inspection.

*Id.* at 166-67.

In addition, in order to access JPay services Wallin had to accept several conditions, including that all communications were subject to monitoring and disclosure. Therefore, he had no reasonable expectation of privacy in his communications.[1] We conclude that the trial court did not err in requiring Wallin to attend a deposition and to answer questions about his JPay communications.

---

[1] Similarly, Wallin argues that the trial court erred in denying his motion to quash the JPay subpoena because of his privacy interests. For the same reasons we discuss above, we reject this argument. And despite Wallin's argument to the contrary, there is nothing improper about DOC's attorney signing the subpoena rather that a judge.

D.       DEFAULT JUDGMENT

Wallin argues that the trial court erred when it entered a default judgment against him. We disagree.

CR 37(b)(2) states that when a party refuses to permit discovery, the trial court "may make such orders in regard to the failure as are just." Such orders include an order "rendering a judgment by default against the disobedient party." CR 37(b)(2)(C). A trial court has broad discretion as to the choice of sanctions. *Burnet*, 131 Wn.2d at 494.

However, before a trial court can impose one of the "harsher remedies" for a discovery violation under CR 37(b), it must explicitly consider the *Burnet* factors: (1) whether the violation was willful or deliberate, (2) whether the violation substantially prejudiced the opposing party's ability to prepare for trial, and (3) whether lesser sanctions probably would suffice. *Jones v. City of Seattle*, 179 Wn.2d 322, 338, 314 P.3d 380 (2013) (citing *Burnet*, 131 Wn.2d at 494). The "harsher remedies" include those sanctions described in CR 37(b)(2). *Mayer v. Sto Indus., Inc.*, 156 Wn.2d 677, 688, 132 P.3d 115 (2006).

Here, Wallin twice refused to attend a scheduled deposition, including once in violation of a direct court order. That subjected him to sanctions under CR 37(b)(2). And the trial court expressly considered the *Burnet* factors on the record, finding that Wallin's refusal to attend the deposition was willful, that this refusal prejudiced DOC's ability to prove their counterclaim, and that the lesser sanctions the court considered would not have an effect on Wallin. The court concluded that a default judgment was the appropriate remedy.

Wallin's only argument is that the trial court erred in ordering him to attend the deposition. But we have rejected that argument above.

We hold that the trial court did not err in entering the default judgment against Wallin.

16

E.    PERMANENT INJUNCTION

Wallin argues that the trial court erred when it entered a permanent injunction precluding him from making future PRA requests.  We disagree.

1.    Legal Principles

The legislature enacted RCW 42.56.565 to address abusive public records requests by inmates.  *See* LAWS OF 2009, ch. 10, §1.  RCW 42.56.565(2) provides that "persons serving criminal sentences in state, local, or privately operated correctional facilities may be enjoined pursuant to this section."  The agency may request the injunction by filing in superior court.  RCW 42.56.565(2).  One of the things a trial court must find in order to issue an injunction is that "[t]he request was made to harass or intimidate the agency or its employees."  RCW 42.56.565(2)(c)(i).  Courts may consider all relevant factors when deciding whether to enjoin a request, including but not limited to:

> (a) [o]ther requests by the requestor; (b) [t]he type of record or records sought; (c) [s]tatements offered by the requestor concerning the purpose of the request; (d) [w]hether disclosure of the requested records would likely harm any person or vital government interest; (e) [w]hether the request seeks a significant and burdensome number of documents; (f) [t]he impact of disclosure on correctional facility security and order, the safety of security of correctional facility staff, inmates, or others; and (g) [t]he deterrence of criminal activity.

RCW 42.56.565(3).

RCW 42.56.565(4) states, "Upon a showing by a preponderance of the evidence, the court may enjoin all or any part of a request or requests.  Based on the evidence, the court may also enjoin, for a period of time the court deems reasonable, future requests by: (a) The same requestor."

We review injunctions issued under the PRA de novo.  *King County. Dep't of Adult & Juv. Det. v. Parmelee*, 162 Wn. App. 337, 351, 254 P.3d 927 (2011).

17

2.    Analysis

The trial court concluded that Wallin's past and ongoing use of the PRA to harass and intimidate agencies, including DOC, justified the issuance of a permanent injunction precluding Wallin's ability to submit PRA requests without court approval. The trial court based this conclusion on numerous findings of fact, including JPay messages between Wallin and his friends and family that supported the inference that Wallin made PRA requests for records that raise novel issues so that he may later file lawsuits over them and make a profit. Wallin does not assign error to or challenge any of the trial court's findings of fact, so they are verities on appeal. *Real Carriage Door Co. ex rel. Rees v. Rees*, 17 Wn. App. 2d 449, 457, 486 P.3d 955 (2021).

Wallin argues only that the trial court erred when it entered the permanent injunction because it was based on the default judgment, which he argues was improper. But we held above that the trial court did not err when it entered the default judgment against him.

Wallin also claims that the injunction is overbroad because it applies to nonparties. But, "[i]n appropriate circumstances, a trial court may find a nonparty in contempt of court when the person has actual knowledge of the court order." *Stella Sales, Inc. v. Johnson*, 97 Wn. App. 11, 22, 985 P.2d 391 (1999). Wallin fails to explain how it was inappropriate for the trial court to craft the injunction in such a way as to apply to knowing nonparties. Therefore, we reject this argument.

Accordingly, we hold that the trial court did not err in the permanent injunction under RCW 42.56.565(2) and (4).

F.    ALLEGED BIAS OF TRIAL COURT

Wallin argues that the trial court exhibited bias against him and violated the appearance of fairness. We disagree.

18

"Pursuant to the appearance of fairness doctrine, a judicial proceeding is valid if a reasonably prudent, disinterested observer would conclude that the parties received a fair, impartial, and neutral hearing." *State v. Solis-Diaz*, 187 Wn.2d 535, 540, 387 P.3d 703 (2017). Under this doctrine, a presiding judge must actually be impartial and also appear to be impartial. *Id*. The question is "whether the judge's impartiality might reasonably be questioned." *Id*. To make this determination, we apply an objective test that assumes a reasonable person knows and understands all the relevant facts. *Id*. The party asserting a violation has the burden of showing sufficient evidence demonstrating a judge's actual or potential bias. *Id*. Mere speculation is not enough. *In re Estate of Hayes*, 185 Wn. App. 567, 607, 342 P.3d 1161 (2015).

Wallin argues that the actions of the trial court show an appearance of bias. But he points to nothing in the record that supports this argument. Instead, Wallin suggests that the trial court was biased because the court consistently ruled against him.

We conclude that Wallin does not demonstrate that the trial court lacked impartiality or presented an appearance of unfairness. The mere fact that the court's rulings did not favor Wallin does not reflect bias. Accordingly, we hold that the trial court did not violate the appearance of fairness doctrine.

G.      MOOTNESS OF REMAINING CHALLENGES

Wallin assigns error to multiple other orders entered by the trial court. We decline to address these issues because they are moot.

If we no longer can provide effective relief, an appeal is moot. *Gonzales v. Inslee*, 21 Wn. App. 2d 110, 124, 504 P.3d 890 (2022). However, if a moot appeal involves issues of continuing and substantial interest, we may exercise our discretion and review it. *Id*. We consider " '(1) the public or private nature of the question presented, (2) the desirability of an

19

authoritative determination to provide future guidance to public officers, and (3) the likelihood that the question will recur' " when determining whether we will exercise our discretion. *Id.* (quoting *Dzaman v. Gowman*, 18 Wn. App. 2d 469, 476, 491 P.3d 1012 (2021)).

Wallin challenges several of the trial court's orders, including orders (1) granting DOC's motion to strike the hearing date on Wallin's motion to show cause, (2) granting DOC's motion to strike the hearing date on Wallin's summary judgment motion, (3) denying Wallin's motion for sanctions, and (4) granting in part and denying in part DOC's CR 43(f)(3) motion. Because we affirm the trial court's orders entering the default judgment and the permanent injunction, and because Wallin does not argue that the issues in the challenged orders are ones of continuing and substantial interest, we hold that these issues are moot and decline to address them.

## H.     FRIVOLOUSNESS OF APPEAL

DOC argues that we should find that Wallin's appeal was frivolous so that it will be considered by future courts when evaluating Wallin's request for fee waivers under RCW 4.24.430. We disagree.

RCW 4.24.430 provides that, if a person serving a sentence in a correctional facility seeks leave to proceed in state court without payment of filing fees in any civil action, we shall deny the request for a fee waiver if the person has, on three or more occasions while incarcerated, brought an action or appeal that was dismissed by a court on the grounds that it was frivolous or malicious. An appeal is frivolous if, considering the entire record, we determine that the appeal presents no debatable issues and is completely without merit. *Wash. Election Integrity Coal. United v. Schumacher*, 28 Wn. App. 2d 176, 206, 537 P.3d 1058 (2023), *review denied*, 2 Wn.3d 1025 (2024). Simply because an appeal lacks merit does not mean that

sanctions are appropriate. *Id.* "Any doubts as to whether an appeal is frivolous should be resolved in favor of the appellant." *Id.*

We hold that Wallin's appeal was not frivolous. Even though we have rejected his arguments, at least a few of his claims are not completely without merit. Accordingly, we reject DOC's request that we find Wallin's appeal frivolous for purposes of RCW 4.24.430.

## CONCLUSION

We affirm the trial court's orders granting a default judgment and a permanent injunction against Wallin.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, P.J.

We concur:

_____, J.

CHE, J.